1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAYMOND WILLIAMS, an individual, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>GEICO GENERAL INSURANCE COMPANY, a Maryland Corporation, CCC INFORMATION SERVICES INCORPORATED, a Delaware Corporation,<br><br>       Defendants. | Case No. 2:19-cv-01403<br><br>**COMPLAINT**<br><br>JURY DEMAND |



# TABLE OF CONTENTS

**Page**

I.   NATURE OF THE CASE ..............................................................................................1

II.  JURISDICTION ...........................................................................................................3

III. VENUE .........................................................................................................................4

IV.  PARTIES .......................................................................................................................4

V.   FACTUAL ALLEGATIONS ........................................................................................4

    A.   GEICO obtains and relies on manipulated data provided by CCC to underpay total loss claims. .........................................................................4

    B.   GEICO underpaid the total loss claims of Plaintiff. ...............................10

VI.  CLASS ACTION ALLEGATIONS ............................................................................12

FIRST CAUSE OF ACTION  (Breach Of Contract Against GEICO)........................................14

SECOND CAUSE OF ACTION  (Breach of the Implied Covenant of Good Faith and Fair Dealing Against GEICO)...................................................................15

THIRD CAUSE OF ACTION  (Consumer Protection Act—Violation of WASH. REV. CODE § 19.86.020 Against All Defendants)...........................................15

FOURTH CAUSE OF ACTION  (Civil Conspiracy Against All Defendants)............................17

FIFTH CAUSE OF ACTION  (Declaratory and Injunctive Relief Against All Defendants) ..........................................................................................................17

PRAYER FOR RELIEF ..............................................................................................................18



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# I.   NATURE OF THE CASE

1.   When a person's vehicle is totaled, an automobile insurance company must not manipulate the data used to value the vehicle to underpay claims. Specifically, Washington law requires insurance companies to ensure that the value of the loss vehicle is "representative of the actual cash value of a comparable motor vehicle in the principally garaged area."[1] "Actual cash value" is defined to mean "the fair market value of the loss vehicle immediately prior to the loss."[2] Fair market value is generally defined along these lines: "The price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treasury Regulation §1.170A-1(c)(2)

2.   Washington law prohibits insurance companies from valuing a total loss vehicle based on market prices of vehicles that are not comparable to the loss vehicle in manufacture and distribution. This includes using salvage and gray-market vehicles to value a loss vehicle that is neither a salvage title nor a gray-market vehicle. Comparing the loss vehicle to salvage vehicles implies the loss vehicle was a total loss immediately *before* the incident.[3] Gray-market vehicles are manufactured for markets outside the U.S. and are therefore not comparable to vehicles made for the U.S. market.

3.   The Defendants work in concert to ensure total loss vehicles are undervalued and thus, underpaid. Defendant CCC Information Services ("CCC") knowingly and intentionally uses salvage titles and gray-market vehicles as comparable vehicles to value the total loss vehicle and Defendant GEICO General Insurance Company ("GEICO")  relies on these deflated values to settle claims. Washington law also prohibits insurance companies from reducing the claim values of total-loss vehicles with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles used to value the loss vehicle, bearing no relation to actual cash

---

[1] *See* e.g. Wash. Admin. Code 284-30-320, 391.
[2] Wash. Admin. Code 284-30-320.
[3] Wash. Admin. Code 284-30-320.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

value.[4] An insurer also must not misstate or conceal material facts that bear upon its estimate of value.

4.      Likewise, companies that sell valuation data to the insurers must not base valuations on market prices of vehicles previously declared total losses. These companies must also not make arbitrary, unexplained, and unjustified adjustments to comparable vehicles used in the valuation. Such companies must ensure that they provide accurate and reliable vehicle values to insurers that pay total loss claims.

5.      In negotiating and settling total loss claims, GEICO and CCC (collectively, "Defendants"), flagrantly violate these rules. First, when CCC selects vehicles to compare with loss vehicles insured by GEICO, it includes salvage vehicles—vehicles previously damaged beyond what is economically viable to repair. Salvage vehicles are not comparable to the loss vehicle and are worth less due to their salvage status. Washington law requires the insurer to determine what the value of the loss vehicle was *before* being totaled, not to value it by comparing it to a vehicle *already* totaled. GEICO works in tandem with CCC to misrepresent the salvage vehicles as comparable to the loss vehicle while failing to disclose their salvage status, deceiving consumers and cheating them on their claims.

6.      Second, when CCC selects vehicles to compare with loss vehicles insured by GEICO, it includes other types of vehicles that are not comparable to the loss vehicle, including gray-market vehicles—vehicles manufactured for consumers in foreign countries and imported into the U.S.—that are not comparable to the loss vehicle and are worth less due to their gray-market status. GEICO works in tandem with CCC to misrepresent the salvage vehicles as comparable to the loss vehicle while failing to disclose their salvage status, deceiving consumers and cheating them on their claims.

7.      Third, when CCC produces valuation reports for GEICO total loss claims, it reduces the value of comparable vehicles by an arbitrary amount it deems a "condition adjustment" without itemizing or explaining the basis for the adjustment as required by

---

[4] *See id.*

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Washington law. GEICO and CCC apply a uniform "condition adjustment" to multiple

2  comparable vehicles involved in a valuation without even distinguishing one vehicle from the

3  next. These arbitrary and unjustified condition adjustments artificially and improperly reduce

4  claim payments by hundreds or thousands of dollars.

5         8.     GEICO is an insurance company bound to process claims fairly and make its

6  insureds whole after an accident. GEICO's systematic under-valuations and underpayments

7  violate its insurance contracts and Washington regulations[5] governing the adjustment of total loss

8  claims. GEICO's actions also violate Washington prohibitions on consumer deception and

9  settling insurance claims in bad faith.

10         9.     CCC represents that it is a "leading provider" of "big data insights" to the

11  insurance industry. CCC provides vehicle valuations to the insurance industry, CCC provides

12  vehicle valuations to GEICO for paying total loss vehicle claims. CCC unlawfully conspires with

13  GEICO to undervalue total loss claims and acts contrary to law, including total loss regulations

14  WAC 284-30-320 and 391, by furnishing valuation reports that (1) list salvage and gray-market

15  vehicles as comparable to the loss vehicle when they are not, and (2) contain arbitrary and

16  unexplained condition adjustments to the values of comparable vehicles.

17         10.    Plaintiff brings this class action on behalf of all those insured under automobile

18  insurance policies issued in the State of Washington by GEICO whose claim valuations were

19  provided by CCC and contained (1) salvage or gray-market vehicles listed as comparable

20  vehicles, and/or (2) values of comparable vehicles reduced by artificial, unexplained "condition

21  adjustments."

22         11.    Plaintiff seeks for himself and the class compensatory damages, treble damages,

23  and attorney's fees, and declaratory and injunctive relief.

## II.     JURISDICTION

25         12.    This Court has jurisdiction under the Class Action Fairness Act of 2005, 28

26  U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in

27

28      [5] *Id.*

COMPLAINT - 3
Case No. 2:19-cv-01403
010475-11/1177230 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. Plaintiff is a citizen of Washington and GEICO is a citizen of Maryland (where it has its principal place of business) and Delaware (where it is incorporated). CCC is a citizen of Delaware (where it is incorporated and has its principal place of business in Illinois).

13.     This Court has personal jurisdiction over GEICO because GEICO is a corporation licensed and authorized to do business in Washington and has transacted business in Clark County, Washington. This Court has personal jurisdiction over CCC because CCC has purposefully directed its activities toward Washington by contracting to provide valuation services to insurance carriers in Washington for use in settling and underpaying total loss claims of Washington insureds. This Court has personal jurisdiction over Plaintiff because Plaintiff consents to this Court's jurisdiction.

### III.     VENUE

14.     Venue is proper in this District under 28 U.S.C. § 1391 because this is the District in which Plaintiff's insurance benefits were denied and the cause of action arose.

### IV.     PARTIES

15.     Plaintiff Raymond Williams was at all relevant times a resident of the State of Washington.

16.     At all times pertinent, Plaintiff Raymond Williams was insured under an automobile insurance policy with GEICO that included coverage for the total loss of a vehicle.

17.     GEICO is a Maryland corporation with its principal place of business in Maryland.

18.     CCC is a Delaware corporation with its principal place of business in Illinois.

### V.     FACTUAL ALLEGATIONS

**A.     GEICO obtains and relies on manipulated data provided by CCC to underpay total loss claims.**

19.     All allegations contained in previous paragraphs are incorporated herein by reference.



20.     When GEICO's customers' cars are wrecked in life-changing accidents, GEICO betrays its duty to process claims fairly and according to law, playing games and putting profits ahead of people. GEICO conspires with CCC to fudge the numbers to shortchange vulnerable consumers, who are relying on GEICO to pay fair value so they can afford to buy a replacement.

21.     Defendants work in concert to create policies and infrastructure that cheat the insureds out of monies to which they are entitled. Under its agreement with GEICO, CCC provides GEICO with valuation reports that apply unjustified, unexplained, and unitemized condition adjustments to reduce the values of comparable vehicles used to value total loss claims. The valuation reports also utilize the prices of salvage and gray-market vehicles to determine the price of the loss vehicle without disclosing their salvage and gray-market status, even though salvage and gray-market vehicles are inherently worth less than non-salvage and non-gray-market vehicles.

22.     Salvage vehicles are vehicles previously declared total losses, and their titles are branded to advise all future owners that the vehicle was so damaged as to be deemed uneconomical to repair. Under Washington law, "Salvage vehicle" is defined as follows:

> [A] vehicle whose certificate of title has been surrendered to the department under RCW 46.12.600 due to the vehicle's destruction or declaration as a total loss or for which there is documentation indicating that the vehicle has been declared salvage or has been damaged to the extent that the owner, an insurer, or other person acting on behalf of the owner, has determined that the cost of parts and labor plus the salvage value has made it uneconomical to repair the vehicle.

Wash. Rev. Code § 46.04.514.

23.     Such serious damage and any associated repairs in a vehicle's history impair its fair market value because, among other things, a reasonable buyer would question the safety and reliability of a vehicle already wrecked.

24.     Gray-market vehicles are vehicles manufactured for markets outside the United States and later imported and offered for sale in the United States.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

25.     Gray-market vehicles are disfavored in the marketplace and generally less valuable than vehicles manufactured for the U.S. market. The prices of gray-market vehicles are depressed for several reasons:

a.   For a given year, make, and model, vehicles made for non-U.S. markets such as Canada have different safety and environmental specifications from vehicles made for the U.S. market and require modifications to comply with U.S. law;

b.   Gray-market vehicles frequently lack a clear chain of title, increasing the risk that the vehicle has been stolen;

c.   Gray-market vehicles are manufactured with an instrument panel and odometer that uses kilometers instead of miles, and the conversion from kilometers to miles creates a risk that the odometer has been manipulated;

d.   The prices of gray-market vehicles are depressed by arbitrage. Because vehicle supply and demand varies and currency strength varies from one country to the next, the cost of a gray-market vehicle is often lower than a vehicle of the same year, make, and model made for and sold in the United States;

26.     For these reasons, a gray-market vehicle is not "a comparable motor vehicle" for a vehicle of the same year, make, and model made for the U.S. market. Using gray-market vehicles to calculate the value of the loss vehicle artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

27.     GEICO's standard form automobile policy provides coverage for the total loss of a vehicle in an accident.

28.     For total loss claims, GEICO must base any cash settlement offer on the "actual cash value of a comparable motor vehicle." WASH. ADMIN. CODE § 284-30-391(2).

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

29.     If a total loss occurs, GEICO promises in its policy it will pay the insured the "actual cash value" of the vehicle, that is, the fair market value of the vehicle immediately before the accident.[6]

30.     For total loss claims, "[c]omparable motor vehicle means a vehicle that is the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data. To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." WASH. ADMIN. CODE § 284-30-320(2).

31.     For total loss claims, GEICO must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available . . . using appropriate deductions or additions for options, mileage or condition when determining comparability." WASH. ADMIN. CODE § 284-30-391(4)(b).

32.     For total loss claims, "[a]ny additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WASH. ADMIN. CODE § 284-30-391(5)(d). This requirement ensures that any adjustments are reasonable and justified and to ensure that consumers can evaluate and challenge any deductions that are improper.

33.     CCC and GEICO have conspired to create a system whereby CCC artificially deflates the estimated value of the total loss vehicle enabling GEICO to offer and pay less than the actual cash value.

34.     GEICO also bases its offers and payments on manipulated valuation reports furnished by CCC that do not satisfy Washington law for two reasons. First, the valuations utilize the prices of salvage and gray-market vehicles that are not comparable to the loss vehicle because of their salvage and gray-market status. Second, the valuations utilize arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles.

---

[6] WAC 284-30-320(1).

COMPLAINT - 7
Case No. 2:19-cv-01403
010475-11/1177230 V1

35.     CCC purports to be "a leading provider of innovative cloud, mobile, telematics, hyperscale technologies, and apps for the automotive insurance and collision repair industry." Its website states that "CCC's solutions and big data insights are delivered through the powerful CCC ONE platform, which connects a vast network of 350+ insurance companies, 24,000+ repair facilities, OEMS, hundreds of parts suppliers, and dozens of third-party data and service providers." CCC caters to the needs and demands of the insurance industry, stating its aim to "[t]rack claim process efficiencies and help ensure customers are happy and engaged."

36.     CCC and GEICO collaborate in creating the valuation report for each total loss vehicle. Under the contracts between CCC and GEICO, Defendants agreed that CCC would provide vehicle valuations based on current market data for total loss claims and a written report with that data for each total loss vehicle. GEICO has contracted with CCC to furnish valuation reports to be used in valuing total loss claims and adjusting the claims for insureds. Upon information and belief, GEICO conducted due diligence on CCC's methodology and/or knew or should have known before contracting that (1) CCC's use of salvage and gray-market vehicle data did not comply with Washington law and would result in deception, delays, and underpayments of motor vehicle total loss claims and (2) CCC's application of condition adjustments to the values of comparable vehicles did not comply with Washington law and would result in deception, delays, and underpayments of motor vehicle total loss claims. GEICO contracted with CCC with the intention of relying upon CCC valuation reports to value total loss claims, knowing that generally total loss claim payments that did not involve a formal appraisal would be based upon the values stated in CCC valuation reports.

37.     For each claim, GEICO provides basic information about the loss vehicle and its condition and configuration. CCC then populates the report with the sales prices of purportedly comparable vehicles it identified that recently sold or were for sale in the geographic area of the insured. The purportedly comparable vehicles include salvage and gray-market vehicles, which are not comparable to plaintiff's loss vehicle because they have been previously deemed a total loss. The report also contains unitemized, unexplained, and unjustified downward condition adjustments to the values of comparable vehicles. CCC collects valuation data on comparable

HB   HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

vehicles and then reduces those valuations to serve the economic interests of the insurer. These reports are arbitrary, unexplained, unjustified, unitemized, inconsistent, and contrary to Washington law, as alleged throughout the Complaint.

38.     The reports contain a purported valuation for the loss vehicle based upon the data in the report. Upon information and belief, GEICO verified the results of some or all of CCC's valuations and at all times knew or should have known that applying unitemized, unexplained, and unjustified condition adjustments to comparable vehicles violates Washington law. GEICO also knew or should have known at all times that basing valuations on the prices of salvage and gray-market vehicles that are not comparable to the insured vehicle does not comply with Washington law. At all times GEICO knew or should have known that using CCC's valuations would cause deception, delays, and underpayments of motor vehicle total loss claims.

39.     Upon information and belief, CCC knows its total loss valuation method does not comply with Washington law. CCC designs its products and services to serve the needs of the insurance industry nationwide. It markets and documents its products and services for insurers on a state-specific basis. Washington's total loss regulations require an insurer to base valuations on the values of comparable motor vehicles, not the list prices of salvage and gray-market vehicles, which are not comparable. Washington's total loss regulations, WAC 284-30-320 and - 391, also expressly require itemization and explanation of condition adjustments. But CCC furnishes the valuation reports to the Insurer Defendants anyway to further the economic interests of the Insurer Defendants at the expense of their insurance customers.

40.     GEICO offers each insured a claim settlement equivalent to the valuation amount found on the report.

41.     The valuation reports reduce the estimated values of comparable vehicles, citing a "condition adjustment," but fail to itemize or explain the basis for these condition adjustments. These condition adjustments are arbitrary and unjustified. Even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the same amount, down to the last dollar, with no itemization or explanation. These blind and arbitrary reductions bear no relation to the actual fair market value of the comparable vehicles or

HB   HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the loss vehicle. Applying an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

42.     The valuation reports also—at least in part—base their calculations upon the values of salvage and gray-market vehicles instead of vehicles comparable to the loss vehicle.

**B.     GEICO underpaid the total loss claims of Plaintiff.**

43.     Plaintiff owned a vehicle which was damaged so seriously as to be a total loss.

44.     Plaintiff made a claim with GEICO for the total loss of his vehicle. GEICO provided a written settlement offer to Plaintiff.

45.     CCC furnished a valuation report to GEICO to be used in adjusting the claim for the value of the vehicle, in accordance with its contract with GEICO. GEICO based their settlement offer upon the valuation report obtained from CCC.

46.     Plaintiff Raymond Williams was the owner of a 2007 Cadillac CTS totaled by storm damage in 2018. GEICO paid $6,364.96 for the loss net of deductible and retention, relying on a CCC valuation report for the $7670.96 value of the loss vehicle. Plaintiff Williams was provided the CCC valuation report when GEICO presented its proposed valuation. GEICO emailed the valuation report to Plaintiff Williams together with a letter outlining the vehicle valuation and claim settlement offer based in part on—and specifically referred Plaintiff Williams to—CCC's valuation. The CCC valuation report was presented as an authoritative source supporting GEICO's determination of the value. The CCC valuation report listed values of five comparable vehicles and applied a uniform condition adjustment of $596 to all five without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the valuations of these comparable vehicles by exactly the same amount, regardless of any individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $596.

47.     The CCC valuation report for Plaintiff Williams' claim also based its calculations on the value of at least one salvage vehicle instead of a comparable vehicle as required by Washington law: Vehicle No. 1G6DP577X70173549 is a salvage title which was totaled in

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

August 2017, several months before Plaintiff made his claim. Yet, this vehicle was included in the CCC valuation report generated at GEICO's request.

48.     The CCC reports provided by GEICO to Plaintiff and the class state whether the loss vehicle is a salvage or gray-market vehicle. Page 16 of Plaintiff Williams' CCC report specifies that Plaintiff Williams' loss vehicle is not a salvage or gray-market vehicle. At the same time, the CCC valuation report uses a salvage vehicle as a comparable vehicle to value Plaintiff's loss vehicle. CCC's valuation report misstates that the salvage vehicle was comparable to the loss vehicle and never discloses that it is comparing the loss vehicle to a salvage vehicle. Using a salvage vehicle resulted in an undervaluation of Plaintiff's vehicle.

49.     Upon information and belief, GEICO and CCC systemically rely upon the value of salvage and gray-market vehicles to value and/or settle total loss claims.

50.     In the past four years alone, CCC has furnished valuation reports to at least four insureds in Washington state that contain at least one gray-market vehicle, and sometimes more than one.

51.     Upon information and belief, GEICO and/or CCC deliberately limit, skew, alter, fabricate, and/or otherwise distort the price data used to value total loss claims, such that the data includes a disproportionate number of prices for salvage vehicles, gray-market vehicles, and other vehicles of types that are not comparable to (and inherently worth less than) the loss vehicles of their insureds.

52.     GEICO and/or CCC fail to remove salvage and/or gray-market vehicle prices from the price data used to value total loss claims.

53.     GEICO and/or CCC fail to take reasonable measures to ensure that the price data used to value total loss claims does not include salvage and/or gray-market vehicle prices.

54.     GEICO and CCC have acted with at least reckless disregard of the rights of others by manipulating the numbers to settle total loss claims. GEICO and CCC have devised valuation methods that are unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

55.     GEICO and CCC's practices have cost consumers tens of millions of dollars in losses as their claims go underpaid. Meanwhile, GEICO and CCC reap millions in wrongful profits by betraying the trust of their consumers.

## VI.     CLASS ACTION ALLEGATIONS

56.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the classes defined below), under Federal Rule of Civil Procedure 23.

57.     The class consists of two subclasses defined as follows:

> All individuals insured by GEICO under a GEICO private passenger vehicle policy who, from the earliest allowable time to the date of judgement,
>
> (1) Received a first-party total loss settlement or settlement offer based in whole or in part on the price of one or more salvage or gray-market vehicles; and/or
>
> (2) Received a first-party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

58.     While the exact number of members cannot be determined, the class consists of at least thousands of persons located throughout the State of Washington. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by GEICO and/or CCC.

59.     There are questions of fact and law common to the class, including the following:

i.   Whether Defendants used the values of salvage or gray-market vehicles to calculate the values of loss vehicles;

ii.  Whether Defendants' use of salvage or gray-market vehicles to calculate the values of loss vehicles was proper;

iii. Whether Defendants applied condition adjustments to comparable vehicles to calculate the values of loss vehicles;

iv.  Whether Defendants' application of condition adjustments to comparable vehicles to calculate the values of loss vehicles was proper;



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

v.   Whether, through each of the foregoing practices, GEICO breached its contracts with its insureds;

vi.   Whether, through each of the foregoing practices, GEICO committed a breach of the common law duty of good faith and fair dealing;

vii.   Whether, through each of the foregoing practices, GEICO violated the Insurance Fair Conduct Act, WASH. REV. CODE § 48.30.010 *et seq.*;

viii.   Whether, through each of the foregoing practices, GEICO violated regulations governing unfair claims settlement practices including WASH. ADMIN. CODE § 284-30-330 *et seq.*;

ix.   Whether, through each of the foregoing practices, Defendants violated the Consumer Protection Act, WASH. REV. CODE § 19.86.020;

x.   Whether, through the foregoing practice, CCC negligently supplied information for the guidance of others;

xi.   Whether, through the foregoing practice, CCC and GEICO entered into an unlawful conspiracy;

xii.   Whether Defendants' use of salvage or gray-market vehicles caused injury to Plaintiff and the class;

xiii.   Whether Defendants' use of improper condition adjustments to value loss vehicles caused injury to Plaintiff and the class;

xiv.   Whether Defendants' actions were unreasonable, frivolous, or unfounded;

xv.   Whether Defendants' actions were reckless, malicious, or willful;

xvi.   Whether Plaintiff and the class are entitled to an award of compensatory damages;

xvii.   Whether Plaintiff and the class are entitled to an award of treble damages;

xviii.   Whether Plaintiff and the class are entitled to an award of attorney's fees;

xix.   Whether Plaintiff and the class are entitled to declaratory and injunctive relief.

60.   Plaintiff has the same interests in this matter as all other members of each class, and his claims are typical of those of all members of each class. Plaintiff's claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiff and all class members have sustained damages arising out of Defendants' common course of conduct as outlined herein. The damages of each class member were caused by Defendants' wrongful conduct.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

61.     Plaintiff will vigorously pursue this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

62.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because GEICO's actions generally apply to the class as a whole, and Plaintiff seeks equitable remedies regarding the class as a whole.

63.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

### FIRST CAUSE OF ACTION
### (Breach Of Contract Against GEICO)

64.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

65.     The GEICO insurance contract specifically provides for payment of the "actual cash value" of a vehicle deemed a total loss because of collisions or comprehensive losses.

66.     GEICO has breached the contract by not offering to settle and by not settling claims based upon the actual cash value of loss vehicles. GEICO departed from actual cash values by (1) basing its valuation and payment of the claims on values of comparable vehicles artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing its valuation and payment of the claims upon the prices of salvage or gray-market vehicles, which by definition are not comparable to the loss vehicle and artificially depress the valuation by virtue of their salvage or gray-market status.

67.     GEICO's numerous breaches have resulted in a systematic failure to pay the actual cash value of total-loss vehicles as required by contract.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

68.     GEICO's breaches and violations have caused damage to Plaintiff and the class.

### SECOND CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against GEICO)**

69.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

70.     GEICO owed the Plaintiff and class members, as its insureds, a duty of good faith and fair dealing at all times during the existence of the insurance contracts and while providing automobile insurance coverage, including when handling total loss claims for its insureds. GEICO is well aware of its duties and touts itself as a trustworthy source of insurance coverage.

71.     GEICO purposefully, in bad faith, and without regard to the rights of the Plaintiff and the class, failed to pay the actual cash value of total-loss vehicles. GEICO's actions breached the insurance contracts and were unreasonable, frivolous, and unfounded.

72.     GEICO's unfair acts and/or acts of bad faith include (1) basing its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing its valuation and payment of the claim upon the prices of salvage or gray-market vehicles, which by definition are not comparable to the loss vehicle and artificially depress the valuation by virtue of their salvage or gray-market status.

73.     GEICO breached the covenant of good faith and fair dealing with the aforementioned conduct.

74.     GEICO's breach of the obligation of good faith and fair dealing caused Plaintiff and class members to incur damages as more fully set forth below.

### THIRD CAUSE OF ACTION
**(Consumer Protection Act—Violation of WASH. REV. CODE § 19.86.020 Against All Defendants)**

75.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

76.     GEICO and CCC's actions complained of herein are deceptive trade practices that have the capacity to and do deceive consumers, as Defendants unreasonably denied payment of

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

benefits to Plaintiff and the class and knowingly misrepresented the basis for its total loss valuations. GEICO failed to adopt and implement reasonable standards for the investigation of claims. GEICO failed to conduct a reasonable investigation regarding its claims payments. GEICO further made false representations as to the characteristics and benefits of its total loss coverage and insurance policies and represented that they were of a particular standard, quality, or grade, knowing they were not. CCC also touts the accuracy of its total loss valuations on its website. Despite acknowledging on its website that it provides accurate, verifiable total loss valuations, CCC intentionally or negligently supplied false and misleading valuation data to GEICO for the guidance of GEICO and their customers in the settlement of total loss claims, knowing the information would be used for this purpose and that the insured would see and rely on data listed in the CCC valuation reports. The CCC valuation reports were false or deceptive because they included condition adjustments to the values of comparable vehicles that were unjustified, arbitrary, unitemized, and unexplained. These adjustments were false or deceptive because they had no basis in fact, and regardless they resulted in a false or deceptive statement of the value of the loss vehicle because they are contrary to Washington law and should not have been applied. And the CCC valuation reports were false or deceptive because they included the use of salvage or gray-market vehicles. Salvage or gray-market vehicles are not true comparable vehicles as required by Washington law. Thus, GEICO's settlement offers were based in part on false valuations provided by CCC that did not reflect the value of the loss vehicle.

77. Defendants' conduct continues to occur in the course of Defendants' business. Defendants' conduct is part of a generalized course of conduct repeated on thousands of occasions, and thus has an impact on the public interest.

78. Defendants' conduct violates the Washington Consumer Protection Act, in particular, but not limited to, WASH. REV. CODE § 19.86.020.

79. As a result of Defendants' actions, Plaintiff and class members incurred damages as more fully set forth below.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

**FOURTH CAUSE OF ACTION**
**(Civil Conspiracy Against All Defendants)**

3

80.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth

4

herein.

5

81.    As alleged above, GEICO knowingly entered into a contract with CCC under

6

which CCC would furnish GEICO with valuation reports that undervalued total loss claims by

7

applying unjustified, unexplained, and unitemized condition adjustments to the values of

8

comparable vehicles. GEICO also entered into a contract with CCC under which CCC would

9

furnish GEICO with valuation reports that undervalued total loss claims by relying upon the

10

prices of salvage or gray-market vehicles, which are not comparable to loss vehicles that are not

11

salvage or gray-market vehicles. GEICO is a sophisticated insurance company that conducts due

12

diligence inquiries on major transactions to purchase products and services from third parties.

13

GEICO contracted with CCC knowing that by doing so, it was incorporating CCC's unlawful

14

valuation methods into its claims handling practices. Using these valuation reports to process and

15

underpay claims violates GEICO's contracts with their insureds and the Washington Consumer

16

Protection Act, Wash. Rev. Code § 19.86.020.

17

82.    The agreements between CCC and GEICO constitute an agreement to accomplish

18

unlawful purposes, to wit, the breach of the insurance contracts. The agreements between CCC

19

and GEICO therefore constitute a civil conspiracy.

20

83.    As a result of Defendants' actions, Plaintiff and class members incurred damages

21

as more fully set forth below.

22

**FIFTH CAUSE OF ACTION**
**(Declaratory and Injunctive Relief Against All Defendants)**

23

84.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth

24

herein.

25

85.    Plaintiff brings this cause of action for himself and the class under Federal Rule of

26

Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an

27

auto insurance policy with GEICO, it violates Washington law and the insurance contracts for

28



GEICO to (1) base its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) base its valuation and payment of the claim upon values of salvage or gray-market vehicles.

86.     This court has the power to declare the rights of the GEICO policyholders and those who would be insured under such policies and who may suffer similar losses, and those who have suffered valuation-related losses.

87.     Plaintiff, for himself and on behalf of the class, seeks a declaration of his rights under the GEICO policy, and seeks a declaration of the rights and liabilities of the parties herein.

88.     With respect to Defendants' continuing unlawful practices, Plaintiff has no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiff therefore seeks an order permanently enjoining all Defendants from (1) basing their valuation and/or payment of the claim on values of comparable vehicles artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing their valuation and payment of the claim upon values of salvage or gray-market vehicles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A.     An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.     An Order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the class;

C.     Declaratory and injunctive relief, including an injunction requiring Defendants to cease and desist from (1) basing their valuations and payments of the claims on values of comparable vehicles artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing their valuations and payments of the claims upon values of salvage or gray-market vehicles;

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1      D.      Treble damages under common law and by statute, under WASH. REV. CODE

2  § 19.86.090;

3      E.      Compensatory damages;

4      F.      An award of attorney's fees and costs, as provided by law and/or as would be

5  reasonable from any recovery of monies recovered for or benefits bestowed upon the class; and

6      G.      Such other and further relief as this Court may deem just, equitable, or proper,

7  including a designation that any unclaimed monies may go to the next best use.

8                          **JURY DEMAND**

9      Under Rule Local Rules W.D. Wash. LCR 38, Plaintiff demands a trial by jury of the

10  claims asserted in this complaint so triable.

11

12  Dated:  September 03, 2019              Respectfully submitted,

13                                          HAGENS BERMAN SOBOL SHAPIRO LLP

14                                          By ___*/s/ Steve W. Berman*_____
                                                Steve W. Berman
15                                          Steve W. Berman (WSBA #12536)
16                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1301 Second Avenue, Suite 2000
17                                          Seattle, WA  98101
                                            Telephone: (206) 623-7292
18                                          Facsimile:  (206) 623-0594
                                            steve@hbsslaw.com

19                                          Robert B. Carey (*pro hac vice pending*)
20                                          John M. DeStefano (*pro hac vice pending*)
                                            Elizabeth T. Beardsley (*pro hac vice pending*)
21                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            11 West Jefferson Street, Suite 1000
22                                          Phoenix, AZ  85003
                                            Telephone: (602) 224-2628
23                                          rob@hbsslaw.com
                                            johnd@hbsslaw.com
24                                          toryb@hbsslaw.com

25                                          *Attorneys for Plaintiff*

26

27

28

