UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND WILLIAMS, an individual, on behalf of himself and all others similarly situated. | Civil Case No. 3:19-cv-5823-BHS |
| Plaintiff, | **GEICO GENERAL INSURANCE COMPANY'S MOTION TO STAY PENDING APPRAISAL OR, ALTERNATIVELY, MOTION TO DISMISS AND MOTION TO STRIKE** |
| v. | |
| GEICO GENERAL INSURANCE COMPANY, a Maryland corporation, CCC INFORMATION SERVICES INCORPORATED, a Delaware Corporation, | **[ORAL ARGUMENT REQUESTED]** |
| Defendants. | **NOTE ON MOTION CALENDAR:** NOVEMBER 22, 2019 |

## <u>Motion</u>

GEICO General Insurance Company ("GEICO General") moves this Court to stay this lawsuit pending the resolution of appraisal, which the parties have agreed to undergo pursuant to the insurance policy at issue in this case. Alternatively, if the Court does not stay this case, GEICO General moves to dismiss this case with prejudice under Federal Rule of Civil Procedure 12(b)(6). GEICO General also moves to strike allegations about "gray-market vehicles" from the Complaint in paragraphs 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, and Prayer for Relief C under Rule 12(f) because those allegations are redundant, immaterial and impertinent.

DEFENDANT GEICO'S MOTION TO DISMISS - Page 1
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

## Memorandum of Law

Plaintiff's 2007 Cadillac CTS ("2007 Cadillac") was insured by a GEICO General insurance policy (the "Policy") when it was totaled by storm damage in 2018.[1] Compl. ¶¶ 44, 65; Policy, attached as Ex. 1[2]. The Policy outlines an appraisal process to determine the 2007 Cadillac's value if "[GEICO General] and [Plaintiff] do not agree on the amount of loss." Ex. 1 at 11. GEICO General demanded appraisal, and on October 15, 2019, Plaintiff agreed, although he would not agree to stay this matter pending appraisal. This Court should stay this case until the appraisal is completed because not doing so "would undermine the very justification for such [appraisal] clauses—to provide an 'inexpensive[ ] and speedy determination of the extent of the loss.'" *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2533286, at *4 (W.D. Wash. June 5, 2014).

If the Court does not stay the case, it should strike from Plaintiff's Complaint allegations about "gray-market vehicles" in paragraphs 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, and C,[3] and dismiss each of Plaintiff's claims for failure to state a claim.

The Complaint rises and falls on GEICO General's compliance with Wash. Admin. Code ("WAC") § 284-30-391, but Plaintiff fails to allege facts plausibly supporting that GEICO General violated it. In support of each of his five causes of action, Plaintiff asserts the same three concerns about GEICO General's valuation of his 2007 Cadillac after it was a total loss: (1) the use of gray-market vehicles as comparable vehicles, which allegedly occurred in other unidentified valuations, but not in Plaintiff's; (2) condition adjustments applied to the comparable vehicles used to determine the 2007 Cadillac's value; and (3) the use of one vehicle with a salvage title as a

---

[1] GEICO General disputes many of Plaintiff's allegations, but assumes they are true for purposes of this Motion. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

[2] The Policy is incorporated by reference into the Complaint and this Court may consider it without converting this motion to a summary judgment motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[3] Although this Motion addresses the gray-market allegations first, the Court need not resolve the Motion to Strike if it dismisses the Complaint in its entirety. The gray-market allegations are unrelated and superfluous to any of Plaintiff's claims.

GEICO'S MOTION TO DISMISS - Page 2
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

comparable vehicle.

- The "gray-market vehicles" allegations should be stricken because, even if taken as true, Plaintiff has not alleged that the use of gray-market vehicles as comparable vehicles had any impact on his claim.

- The "condition adjustments" allegations cannot support Plaintiff's claims because they are itemized, explained and specifically permitted by WAC § 284-30-320(3), which expressly allows adjustments "[t]o achieve comparability."

- The WAC imposes no categorical prohibition against using vehicles with salvage titles as "comparable motor vehicles." All it requires is vehicles with "the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data." WAC § 284-30-320(3). Plaintiff alleges only that one of the comparable vehicles used to value the 2007 Cadillac had a salvage title and was damaged months earlier. He alleges nothing about the condition of the vehicle at the time it was advertised by a car dealer for sale to plausibly suggest that it was not in a "similar overall condition."

Because each of Plaintiff's causes of action relies upon these same allegations, they each fail and should be dismissed.

## I.   THE COURT SHOULD STAY THIS CASE PENDING APPRAISAL

Appraisal clauses are vigorously enforced under Washington law, including the provision of the code relied upon by Plaintiff. *Keesling v. W. Fire Ins. Co. of Fort Scott, Kansas*, 10 Wash. App. 841, 846–50, 520 P.2d 622, 626–28 (1974) ("insurance polic[ies] requiring an appraisal are universally held to be valid and enforceable, and, if the assured refuses to comply with a demand for appraisal, such refusal may be plead in bar of a recovery"); *Kochendorfer v. Metropolitan Property & Cas. Ins. Co.,* No. 11–cv–1162, 2012 WL 1204714, at *2 (W.D. Wash. Apr.11, 2012) (appraisal awards under insurance policy provisions are "conclusive as to the amount of loss," and may be challenged "only with respect to fairness of the appraisal process"); WAC § 284-30-391(3)

GEICO'S MOTION TO DISMISS - Page 3
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

("Appraisal: If the first party claimant and the insurer fail to agree on the actual cash value of the loss vehicle and the insurance policy has an appraisal provision, either the insurer or the first party claimant may invoke the appraisal provision of the policy to resolve disputes concerning the actual cash value.").

The Policy's appraisal provision states:

> If we and the **insured** do not agree on the amount of **loss**, either may, within 60 days after proof of loss is filed, demand an appraisal of the **loss**. In that event, we and the **insured** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the **actual cash value** and the amount of the **loss**. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of **loss**. We and the **insured** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> Neither we nor the **insured** waive any of our rights under this policy by agreeing to an appraisal.

Ex. 1 at 11 (emphasis in original).

There is no dispute here as to whether to conduct appraisal. Plaintiff filed his Complaint on September 3, 2019, for the first time asserting he was underpaid in the settlement of his total loss claim. Compl. ¶¶ 46-47. On October 8, 2019, GEICO General demanded appraisal. Ex. 2, attached hereto. On October 15, 2019, Plaintiff agreed to proceed with appraisal. Ex. 3, attached hereto. Plaintiff, however, has refused to agree to stay this case pending appraisal.

Courts, including this District, routinely stay the underlying case while the parties proceed with appraisal. *MKB Constructors*, 2014 WL 2533286, at *4-5 (compiling cases granting stays and noting the absence of any case "permitting the parties to go to trial first and then subsequently submit to the policy's appraisal process in order to determine the value of the loss."). Not staying the case "would undermine the very justification for such clauses—to provide an 'inexpensive[ ] and speedy determination of the extent of the loss.'" *Id.* The appraisal sets the value of the loss, which could decide many, if not all, issues in this case. *See id.* (discussing same). One of the parties may also find fault in the appraisal process, creating a new litigation issue. *Id.* Continuing to litigate while appraisal is pending "does not advance the goals or purpose of the policy's appraisal process. It undermines them." *Id.*

GEICO'S MOTION TO DISMISS - Page 4
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

The appraisal award will be conclusive as to the amount of Plaintiff's loss. Plaintiff's Complaint, as presently constructed, may be inapplicable to the post-appraisal circumstances, and is premature. The appraisal may reveal that Plaintiff's claim was settled for the actual cash value of the 2007 Cadillac. As a result of the appraisal, Plaintiff may be paid the actual cash value of the 2007 Cadillac. Alleging to the contrary defies common sense. Plaintiff also will not be able to represent a class of GEICO General insureds whose claims were allegedly settled for less than the actual cash value of their total loss vehicles.

Without a stay, some or all of GEICO General's instant motion to dismiss may become moot. Plaintiff may want to amend the Complaint after the appraisal. Depending on the appraisal's outcome, GEICO General may want to file a different motion to dismiss. The Court should stay this matter pending appraisal so the main item in contention – the amount paid to Plaintiff for the loss of his vehicle – can be resolved, and any issues remaining after appraisal can be properly framed.

## II. THE COURT SHOULD STRIKE ALLEGATIONS ABOUT GRAY-MARKET VEHICLES

The Complaint repeatedly refers to gray-market vehicles, but Plaintiff does not allege he was harmed by the use of gray-market vehicles.[4] These allegations about gray-market vehicles are unconnected to Plaintiff's claims against GEICO General or CCC. They are immaterial, impertinent and redundant, and should be stricken from the Complaint. *See* Fed. R. Civ. P. 12(f) (a court may strike immaterial, impertinent, or redundant matters). If they are not stricken, the Court and the Parties would waste time on discovery, and otherwise litigating, allegations that are unconnected to Plaintiff's claims.

That Plaintiff seeks to represent a class does not save these allegations from being stricken because he cannot represent a class of which he is not a party. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) ("a class representative must be part of the class and 'possess the

---

[4] *See* Compl. ¶¶ 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, Prayer for Relief C (referring to gray-market vehicles, but not alleging any relation to his claim).

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

same interest and suffer the same injury' as the class members").  Plaintiff does not allege he was injured by the use of gray-market vehicles, so he neither possesses the same interest as alleged putative class members who were, nor did he suffer the same injury.

"Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under [Rule] 12(f) to delete the complaint's class allegations.").  And "no amount of time or discovery can cure these deficiencies."  *In re Yasmin & Yaz (Drospirenone) Mktg.,* 275 F.R.D. 270, 274 (S.D. Ill. 2011).  Class discovery on gray-market vehicles would needlessly waste party resources and only delay the inevitable.  *See id.*[5]  Such waste would contradict Rule 12(f), which is intended to "avoid the expenditure of time and money that must arise from litigating spurious issues."  *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994)) (internal quotation marks omitted).

Plaintiff cannot represent a class of individuals that allegedly had a gray-market vehicle included as a comparable vehicle because Plaintiff has not alleged such a vehicle was included in his own report.  The references to gray-market vehicles in paragraphs 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, and C should be stricken from the Complaint.

## III.  PLAINTIFF HAS NOT PLAUSIBLY ALLEGED FACTS SUGGESTING GEICO GENERAL DID NOT COMPLY WITH WAC REQUIREMENTS

The WAC provides different methods for an insurer to determine the actual cash value of a vehicle to be used in offering a cash settlement for a total loss.  WAC 284-30-391(2).  GEICO

---

[5] "District courts have broad discretion to control the class certification process, and *whether or not discovery will be permitted lies within the sound discretion of the trial court.*"  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 941 (9th Cir. 2009) (emphasis added).

GEICO'S MOTION TO DISMISS - Page 6
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

General "provided a written settlement offer to Plaintiff." Compl. ¶ 44. As Plaintiff alleges, and the WAC contemplates, it was an offer to settle the claim, not a binding payment. GEICO General "based [its] settlement offer upon a valuation report obtained from Defendant CCC" Information Services, Inc. ("CCC"). *Id.* ¶ 45. This 21-page report explains in detail the methodology CCC used to derive the 2007 Cadillac's value, provides the characteristics of the 2007 Cadillac and details of the comparable vehicles used, including make, model, VIN, options, location, and dealer offering each of the vehicle, and shows the weight applied to each comparable vehicle. *See* Valuation Report attached hereto as Ex. 4.[6]

Plaintiff does not dispute that the CCC report generally complies with one or more of the methods prescribed in the WAC to determine actual cash value for a settlement offer—to the contrary, based on his allegations, the product complies with at least three different permitted methods, subsections (b)(i), (b)(iii), and (b)(iv).[7] Instead, Plaintiff alleges that two aspects of the report prepared by CCC for his 2007 Cadillac violate the WAC.[8] Even though the WAC permits "deductions or additions for . . . condition," he alleges that the "condition adjustment" applied to comparable vehicles improperly reduces claim payments. WAC § 284-30-320(3); Compl. ¶ 46. Even though the WAC defines comparable vehicle as "a vehicle that is the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall

---

[6] The Valuation Report is incorporated into the Complaint by reference, and this Court may consider it without converting this to a summary judgment motion. *See Ritchie*, 342 F.3d at 908.

[7] Subsection (b)(i) permits the use of "two or more comparable motor vehicles advertised for sale in the local media" that are located within 150 miles of where the 2007 Cadillac is principally garaged and subsection (b)(iii) permits the use of "two or more comparable motor vehicles advertised for sale in the local media" that are located within 150 miles of where the 2007 Cadillac is principally garaged. The CCC product allegedly used five dealer advertised comparable motor vehicles located within 24 miles of the 2007 Cadillac, complying with both of these subsections. Compl. ¶ 46; Ex. 4 at 9-11. Subsection (b)(iv) permits the use of a computerized source to establish a statistically valid actual cash value, and has three requirements for the computerized source. Plaintiff does not allege that the CCC product is not a computerized source that does not generally comply with these requirements.

[8] He also generally alleges a third violation: the use of gray-market vehicles as comparable vehicles. Compl. ¶¶ 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, and C. Because he does not allege any gray-market vehicles were used to determine the value of the 2007 Cadillac, GEICO General does not address that here, other than in the motion to strike.

GEICO'S MOTION TO DISMISS - Page 7
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

condition, as established by current data," and he alleges nothing about the condition of any of the five comparable vehicles listed in his report, he also alleges that because one of those vehicles had a salvage title, it was not a comparable vehicle. WAC § 284-30-320(3); Compl. ¶¶ 47-48. Plaintiff is incorrect on both charges.

**A.** **The WAC Permits Adjustment For Condition And GEICO General Properly Itemized And Explained The Adjustments For The 2007 Cadillac**

The WAC permits GEICO General to "settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy." WAC § 284-30-391(2). This is true no matter the method used to determine this actual cash value. *Id.* A "comparable motor vehicle" is "a vehicle that is the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data." WAC § 284-30-320(3). "To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." *Id.*

Although the WAC specifically permits deductions or additions for condition, Plaintiff's Complaint alleges the Condition Adjustment applied to the comparable vehicles used to determine the 2007 Cadillac's value is not authorized by the WAC. *Id.* To make this allegation, Plaintiff's Complaint misconstrues the nature of the Condition Adjustment and omits relevant information and explanations included in the 21-page CCC valuation. By doing so, Plaintiff is really asking that no adjustment be made for the 2007 Cadillac's condition at all (*i.e.*, that GEICO General pay him as if the 2007 Cadillac was in Dealer Retail condition), even though he does not challenge GEICO's assessment of the 2007 Cadillac's condition. Plaintiff's request is inconsistent with the WAC. *See* WAC 284-30-391(4)(b) (insurer settlement offers may have deductions or additions for condition when determining comparability); WAC 284-30-320(1) (defining "actual cash value" as the value of the loss vehicle immediately before the loss). If Plaintiff were correct, insurers would not be able to take the condition of the loss vehicle into account, regardless of the vehicle's condition at the time of the loss. This is not supported by the WAC, nor the Policy. *Id.*

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

Plaintiff's only issue with the Condition Adjustment is based on an incorrect premise. The Condition Adjustments are not applied to vehicles with "unique characteristics" or distinguishing features, as Plaintiff incorrectly alleges. *See* Comp. ¶¶ 3, 41, 46. The CCC report first derived a "Base Vehicle Value" by identifying the advertised price of five comparable vehicles from dealers. Ex. 4 at 9-14. To increase the similarity of the comparable vehicles to the loss vehicle before averaging their resulting values, upward and downward adjustments were made based on the package, make/model/trim, options, and mileage, as permitted by the WAC. *Id.* at 10, 12.[9] After these adjustments are made, the comparable vehicles, which are all dealer advertised, as opposed to privately owned, are similar to the loss vehicle except for one respect–condition. A Condition Adjustment is made to each comparable vehicle to set the comparable vehicle to an Average Private condition, to which the 2007 Cadillac is also compared. *Id.* at 9-14. Condition Adjustments made to materially similar dealer advertised vehicles to capture the anticipated value difference between a Dealer Retail and an Average Private vehicle would necessarily be the same.

Nor is this Condition Adjustment un-itemized or unexplained, as Plaintiff alleges. *See* Compl. ¶ 41 ("with no itemization or explanation"). The 21-page report clearly "listed" (*i.e.* itemized) the condition adjustment to comparable vehicles. Compl. ¶ 46; Ex. 4 at 9-12. The report also explains in detail the process CCC used to determine the 2007 Cadillac's value, including the adjustments "to achieve comparability" with the comparable vehicles in options and mileage, and the explanation that the Condition Adjustment sets all of the now-materially identical comparable vehicles to the same condition. Ex. 4 at 2-13.[10] Plaintiff's claim either ignores or misunderstands

---

[9] WAC 284-30-391(4)(b) (insurer may adjust for condition); WAC 284-30-391(5)(d) (allowing additions or deductions from the actual cash value if they are explained and itemized); WAC 284-30-320(1) (defining actual cash value as the value immediately before the loss).

[10] *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2018 WL 3344791 (W.D. Wash. July 9, 2018), the only case interpreting related WAC provisions, is inapposite. The defendant there argued that the WAC imposes no disclosure requirement, and that deductions or additions to comparable vehicles did not have to be explained or itemized, *id.* at *2, which GEICO General does not argue here. *Lundquist*'s holding that the complaint in that case stated a claim also did not address the allegations here or the itemization and explanations in Plaintiff's CCC valuation to which GEICO General points the Court. *See, generally, id.*

GEICO'S MOTION TO DISMISS - Page 9
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

the information in the report.

The report details the differences between the 2007 Cadillac and the comparable vehicles and the adjustments made for those differences.  For example, page 10 includes this comparison and adjustments for the characteristics of three comparable vehicles:

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Chrome Wheels | ✓ | ✗ | ✗ | ✗ |
| Electric Glass Roof | ✓ | ✗ | ✗ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ | ✓ |
| **List Price** | | $ 6,569 | $ 5,500 | $ 7,200 |
| **Adjustments:** | | | | |
| Package | | + $ 207 | + $ 207 | + $ 155 |
| Make/Model/Trim | | | - $ 500 | - $ 500 |
| Options | | + $ 441 | + $ 441 | - $ 389 |
| Mileage | | + $ 123 | + $ 1,016 | + $ 364 |
| Condition¹ | | - $ 596 | - $ 596 | - $ 596 |
| **Adjusted Comparable Value** | | **$ 6,744** | **$ 6,068** | **$ 6,234** |

The report explains that the $596 Condition Adjustment "sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section." Ex. 4 at 9, 11.  In other words, the Condition Adjustment set the five dealer-advertised vehicles to Average Private condition so an apples-to-apples comparison can be performed with the 2007 Cadillac (which is also set to Average Private condition before applying the unchallenged adjustments based on GEICO General's assessment of its condition).

Once a Base Vehicle Value was set, using an Average Private condition vehicle, this value was adjusted based on the actual condition of nine components of the 2007 Cadillac.  Ex. 4 at 7-8. Based on the adjuster's observation of the 2007 Cadillac, six components were in Average Private condition, two were in Dealer Retail condition, and one was in Rough condition.  *Id.*  This resulted in a total upward adjustment of $6.  Refurbishments noted by the adjuster (for new tires and a

GEICO'S MOTION TO DISMISS - Page 10
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

maintenance item), resulted in an additional upward adjustment of $165. *Id.* These adjustments are all itemized and explained. *Id.* (for example, a note explains that dollar adjustments "reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition . . . based upon interviews with dealerships across the United States"). This total adjustment is reflected in the Summary on Page 1:



The impact of these adjustments on the 2007 Cadillac's value, as compared to a vehicle for sale at a dealership, was $425 (*i.e.*, $596 less the $171 upwards adjustment). The WAC unambiguously permits GEICO General to adjust for the 2007 Cadillac's "options, mileage or condition when determining comparability." WAC 284-30-391(4)(b). Plaintiff provided no plausible factual allegations suggesting the $425 reduction violated the WAC.

GEICO General also provided Plaintiff sufficient information to challenge the valuation, if he felt it necessary to do so. Compl ¶ 46 (alleging GEICO General gave Plaintiff the 21-page CCC valuation). He had the comparable vehicles that were used, and where to find them, and the adjustments that were made to "achieve comparability," including based on options and condition, and the dollar amounts of those adjustments. *Id.* He also could have asked GEICO General to "reopen the claim file" if he had "not [been] able to purchase a comparable motor vehicle for the

GEICO'S MOTION TO DISMISS - Page 11
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

1 agreed amount but was able to locate, but did not purchase a comparable motor vehicle that costs

2 more than the agreed settlement amount." WAC 284-30-391(6)(a). Nowhere does Plaintiff allege

3 he was unable to purchase a comparable motor vehicle for the amount GEICO General paid him

4 and he accepted.

**B.** **The WAC Does Not Prohibit The Use Of Vehicles With Salvage Titles As Comparable Vehicles And Plaintiff Alleges Nothing About The Condition Of The Vehicle Allegedly Used In Valuing The 2007 Cadillac To Plausibly Suggest That It Was Not Comparable**

8 Nowhere does the WAC prohibit the use of salvage vehicles as comparable motor vehicles.

9 Rather, it requires insurers to use "comparable motor vehicles," defined as "a vehicle that is the

10 same or newer model year, similar body style, with similar options and mileage as the loss vehicle

11 and in similar overall condition, as established by current data." WAC § 284-30-391(2)(a); WAC

12 § 284-30-320(3).

13 Plaintiff claims "Comp 2" (with VIN 1G6DP577X70173549) "was totaled in August 2017,

14 several months before Plaintiff made his claim," had a salvage title, and should not have been

15 included as a comparable motor vehicle. Compl. ¶¶ 47-48; Ex. 4 at 9 (identifying Comp. 2).

16 Plaintiff, however, does not allege that Comp 2 was not the same or a newer model year, that it

17 did not have a similar body style, options, mileage, or overall condition, or did not comply with

18 any expressed requirements of the WAC. Instead, he implies requirement into the WAC.

19 The report clearly reflects that Comp 2 was the same model year, and it details adjustments

20 for the differences in mileage, package, trim and options. This leaves only that the comparable

21 motor vehicle has to be "in similar overall condition." Plaintiff, however, has not alleged anything

22 about the condition of Comp 2, and certainly not that it was not in similar overall condition. All

23 he alleges is that it was damaged months earlier and it had a salvage title, Compl. ¶ 47, but neither

24 of those allegations plausibly suggests that Comp 2 was in a different "overall condition" when

25 the dealership advertised it for sale.

26 Title status is not the same as condition, nor does Plaintiff allege it is. All Plaintiff alleges

27 is that a salvage title raises questions about "the safety and the reliability of the vehicle already

28
GEICO'S MOTION TO DISMISS - Page 12
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

wrecked," Compl. ¶ 23, he does not allege there were any issues with the safety and reliability of Comp 2. *See* Compl. ¶ 47 (alleging nothing about Comp 2's condition). Plaintiff's assertion that title status automatically eliminates a vehicle from being identified as a comparable motor vehicle finds no support in the WAC, which only requires similar overall condition and does not mention title status, or salvage title at all. This Court must assume that the legislature intended that omission. *State v. LG Elecs., Inc.*, 186 Wash. 2d 1, 9, 375 P.3d 636, 640 (2016) ("'[w]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions.'") (quoting *In re Pers. Restraint of Hopkins*, 137 Wash.2d 897, 901, 976 P.2d 616 (1999)) (alteration in original). Without factual allegations plausibly suggesting that Comp 2 was not a "comparable motor vehicle," this Court should not read a new requirement into the WAC and should not impose a categorical exclusion of salvage title vehicles where the legislature did not. Nor should the Court speculate as to the condition of Comp 2 where Plaintiff has alleged nothing. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to withstand a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level").

## IV. PLAINTIFF'S CAUSES OF ACTION ALL FAIL

Because Plaintiff has not plausibly alleged that GEICO General's settlement offer did not comply with the WAC 284-30-391, he has not alleged that GEICO General violated the WAC and each of his causes of action fails: there is no breach of contract (Count I); there is no breach of the implied covenant of good faith and fair dealing (Count II); there is no violation of the Washington Consumer Protection Act (Count III); there is no civil conspiracy (Count IV); and there is no basis for the declaratory or injunctive relief holding that Plaintiff requests (Count V).

### A. The First Cause Of Action Fails Because Plaintiff Has Not Plausibly Alleged That GEICO General Breached The Terms Of The Policy

Plaintiff has not plausibly alleged that GEICO General breached the terms of the Policy. *Dania, Inc. v. Skanska USA Bldg. Inc.*, 185 Wash. App. 359, 374 (2014) (breach of contract elements are duty, breach, causation, and damages). Plaintiff's breach of contract claim is entirely

GEICO'S MOTION TO DISMISS - Page 13
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

based on an alleged failure to pay the actual cash value of the 2007 Cadillac, as required by WAC 284-30-391, because of the Condition Adjustment and the inclusion of "salvage or gray-market vehicles" as comparable vehicles. Compl. ¶¶ 28, 65-68. Because the Condition Adjustment is justified, itemized and explained, *see supra* § III(A), and Plaintiff has not alleged facts plausibly suggesting any of the vehicles used as comparable vehicles were not "comparable motor vehicles," *see supra* § III(B), his underpayment claim fails. *See Twombly*, 550 U.S. at 570 (Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

Since appraisal is moving forward, Plaintiff also cannot allege that the purported breach of contract caused him any injury, and the claim is premature and fails to state a claim.

## B. <u>The Second Cause Of Action Fails Because Plaintiff Has Not Plausibly Alleged That GEICO General Breached The Implied Covenant Of Good Faith And Fair Dealing</u>

For his duty of good faith and fair dealing claim, Plaintiff must allege that GEICO General did not perform contractual duties in good faith. *See Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 807 P.2d 356, 360 (1991) (The implied duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement."); *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash. 2d 269, 279 (1998) ("The insurer is only required to fulfill its contractual and statutory obligation to fully and fairly investigate the claim."). When exercising discretion, as GEICO General is alleged to have done here in determining the 2007 Cadillac's actual cash value, it is only required to exercise its duty reasonably. *See Curtis v. N. Life Ins. Co.*, 147 Wash. App. 1030 (2008) ("Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith—a requirement that includes the duty to exercise the discretion reasonably.").

Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing turns on the same allegations as his breach of contract claim. Compl. ¶¶ 66, 72. For the same reasons the breach of contract claim fails, this claim fails.

Even if Plaintiff's breach of contract claim survives, this claim fails. The Valuation Report

GEICO'S MOTION TO DISMISS - Page 14
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

itself shows that GEICO General acted *reasonably* in: (1) investigating the actual cash value of the loss vehicle based on comparable vehicles, and (2) itemizing and explaining each step in the calculation of actual cash value for the Plaintiff. *See* Ex. 4; Compl. ¶ 45 (noting "GEICO based their settlement offer upon the valuation report obtained from CCC"); Compl. ¶ 3 and heading V(A) (noting that GEICO General relies upon the values provided by CCC).

GEICO General acted reasonably by giving Plaintiff the information used to determine the amount of the loss. The insured is free to negotiate with GEICO General, and question any information in the report. *See* WAC §§ 284-30-391(2), (4)(a), 4(b) (requirements for offers to settle total loss claims). It is also why the WAC permits an insured to ask an insurer to "reopen the claim file" if he is "not able to purchase a comparable motor vehicle for the agreed amount but was able to locate, but did not purchase a comparable motor vehicle that costs more than the agreed settlement amount," WAC 284-30-391(6)(a), something Plaintiff here did not do.

In addition, as with Plaintiff's breach of contract claim, since appraisal is moving forward, Plaintiff cannot allege that the purported breach of duty of good faith and fair dealing caused him any injury, and the claim is premature and fails to state a claim.

## C. The Third Cause Of Action Fails Because Plaintiff Has Not Plausibly Alleged That GEICO General Violated Washington's Consumer Protection Act

For his Washington Consumer Protection Act claim, Plaintiff must allege that: (1) GEICO General engaged in an unfair or deceptive act or practice; (2) the act or practice occurred in the conduct of GEICO General's trade or commerce; (3) the act or practice affects the public interest; (4) Plaintiff was injured in either his business or his property, and (5) GEICO General's act or practice was a proximate cause of Plaintiff's injury. Wash. Pattern Jury Instr. Civ. WPI 310.01 (7th ed.); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 787–93, 719 P.2d 531 (1986).

Plaintiff provides a laundry list of allegedly deceptive acts, which can be grouped into categories. Compl. ¶ 76. None of these categories supports his claim.

- *Unreasonably denied payment of benefits/used condition adjustments/included a salvage*

GEICO'S MOTION TO DISMISS - Page 15
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

*title vehicle as a comparable.*  These claims, fail for the same reasons as the breach of contract and bad faith claims.  *See supra* §§ IV.A and B.

- *Misrepresenting the basis for the valuation/using misleading data.*  GEICO General did not misrepresent the basis for its valuation, but presented ample information about the comparable vehicles, the 2007 Cadillac, and the process through which GEICO General arrived at the alleged settlement offer.  Ex. 4; *supra* § III.  GEICO General provided Plaintiff with the data necessary should he wish to challenge GEICO General's use of any particular comparable vehicle and/or any adjustments made to the comparable and loss vehicles.  Compl. ¶ 46 (alleging GEICO General provided Plaintiff the CCC report).

- *Failing to reasonably investigate the basis of its settlement offers.*  Plaintiff has not alleged facts plausibly suggesting that GEICO General's reliance on CCC was unreasonable.  Plaintiff also provided no authority suggesting that CCC or GEICO General is required to run title searches on every comparable vehicle.  Nor can that be reasonably implied from WAC 284-30-320(3), which only requires comparable motor vehicles to be "in similar overall condition," not identical condition.

Plaintiff has failed to allege facts plausibly suggesting that GEICO General's use of a CCC valuation as the settlement of his claim was, or included, an unfair or deceptive act.  He also failed to allege he was injured in his property, because of any such act.

This claim is also premature and fails to state a claim because appraisal is moving forward and Plaintiff cannot allege that any purported violation caused him any injury.

### D.  <u>The Fourth Cause Of Action Fails Because Plaintiff Has Not Plausibly Alleged That GEICO General Committed An Unlawful Act Or That GEICO General Knowingly Entered A Conspiracy With CCC To Do So</u>

A civil conspiracy involves "a combination of two or more persons to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means."  *Harrington v. Richeson*, 40 Wn. 2d 557, 245 P.2d 191 (1952).  Evidence of a conspiracy "must be inconsistent with a lawful or honest purpose and reasonably consistent only with [the] existence of the conspiracy."  *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 529, 424 P.2d 290 (1967).  "A properly plead conspiracy must set

GEICO'S MOTION TO DISMISS - Page 16
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

forth with particularity the facts and circumstances constituting the alleged conspiracy." *Thornes v. IMB Lender Bus. Process Servs., Inc.*, No. C10-1716MJP, 2011 WL 677428, at *2 (W.D. Wash. Feb. 15, 2011) (citation and internal quotations omitted).

As an initial matter, no criminal or unlawful act was performed by either GEICO General or CCC as both acted in compliance with the WAC. *See supra* § III.

The Complaint also fails to "set forth with particularity the facts and circumstances" of an agreement between GEICO General and CCC. The Complaint simply alleges in conclusory fashion that GEICO General and CCC have an unspecified "agreement" to undervalue claims. Compl. ¶ 82. Plaintiff must allege more than GEICO General's agreement to use CCC's product to support a claim. In *American Dental Ass'n v. Cigna Corp.*, the 11th Circuit held that "the plaintiffs failed to plead a conspiratorial agreement because they did not allege specifically *how* the defendants agreed to employ allegedly fraudulent billing procedures as part of a scheme" – they had not asserted "allegations explaining how exactly the defendants went about entering into an agreement with each other." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068–69 (11th Cir. 2017) (discussing *American Dental*, 605 F.3d 1283, 1291 (11th Cir. 2010)) (emphasis in original). Here, Plaintiff has failed to allege exactly how GEICO General and CCC went about entering into an agreement with each other to employ an allegedly illegal scheme, as opposed to a simple vendor/vendee relationship. Plaintiff's allegation of an unspecified "agreement" does not meet the standards necessary to allege a civil conspiracy.

There are also no allegations establishing the facts of this alleged "agreement" to violate Washington law, including who was involved or where or when the conspiracy arose, nor explanation of why GEICO General or CCC would plausibly enter into an agreement to undervalue vehicles in light of CCC's business as a "leading provider" of vehicle valuations. Compl. ¶¶ 9, 35. As there can be no civil conspiracy without an agreement pled with particularity, Plaintiff's claim fails.

This claim is also premature and fails to state a claim because appraisal is moving forward and, Plaintiff cannot allege that any purported violation caused him any injury.

GEICO'S MOTION TO DISMISS - Page 17
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

### E. The Fifth Cause Of Action Fails Because There Is No Basis For The Declaratory Or Injunctive Relief Requested

Plaintiff's request for declaratory and injunctive relief relies on the same allegations as his breach of contract claim. Compl. ¶¶ 66, 85, 88. This claim fails for the same reasons as the breach of contract claim fails. *See supra* § IV.A.

Even assuming Plaintiff stated a breach of contract claim (which he did not), the declaratory relief claim is duplicative and must be dismissed. *See Mangindin v. Washington Mut. Bank,* 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action"); *Mangindin v. Wash. Mut. Bank*, 637 F.Supp.2d 700, 707–08 (N.D. Cal. 2009) (dismissing plaintiff's declaratory relief claim as duplicative and unnecessary because the claim was "entirely commensurate with the relief sought through the other causes of action").

Plaintiff's injunctive relief claim similarly fails. For an injunction, Plaintiff must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). Of course, Plaintiff has an adequate remedy at law, and he asserts it in this case.

## V. CONCLUSION

For the foregoing reasons, Defendant GEICO General respectfully requests that this Court stay these proceedings until the appraisal Plaintiff agreed to is completed. In the alternative, GEICO General requests the Court dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), or, if the Complaint is not completely dismissed, strike the allegations regarding gray-market vehicles from the Complaint at paragraphs 2, 3, 6, 9, 10, 21, 24-26, 34, 36-39, 42, 48-53, 57, 59, 66, 72, 76, 81, 85, 88, and Prayer for Relief C.

Respectfully submitted this 28th day of October, 2019.

GEICO'S MOTION TO DISMISS - Page 18
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

STOEL RIVES LLP


*/s/ Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com


**HUSCH BLACKWELL LLP**

**Dan Goldfine** (admitted pro hac vice)
E-mail: dan.goldfine@huschblackwell.com
Telephone: 480.824.7887
**Ian M. Fischer** (admitted pro hac vice)
E-mail: ian.fischer@huschblackwell.com
Telephone: 480.824.7885
**Brian J. Hembd** (admitted pro hac vice)
E-mail: brian.hembd@huschblackwell.com
Telephone: 480.824.7934
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
Telephone: 480.824.7900
Facsimile: 480.824.7905

Attorneys for Defendant GEICO General Insurance
Company

GEICO'S MOTION TO DISMISS - Page 19
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 28,2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Elizabeth T Beardsley**
  toryb@hbsslaw.com

- **Steve W. Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com,leighah@hbsslaw.com,nicolleg@hbsslaw.com

- **Jason R Burt**
  jason.burt@lw.com,chefiling@lw.com

- **Robert B. Carey**
  rob@hbsslaw.com,ecfphx@hbsslaw.com

- **John M. DeStefano**
  johnd@hbsslaw.com,leighah@hbsslaw.com

- **Ian M Fischer**
  ian.fischer@huschblackwell.com,veronnica.collins@huschblackwell.com

- **Daniel W Goldfine**
  dan.goldfine@huschblackwell.com,veronnica.collins@huschblackwell.com

- **Brian J Hembd**
  brian.hembd@huschblackwell.com,veronnica.collins@huschblackwell.com

- **Kathleen P Lally**
  kathleen.lally@lw.com,chicago-litigation-services-9637@ecf.pacerpro.com,chefiling@lw.com

- **Kathleen M O'Sullivan**
  KOSullivan@perkinscoie.com,docketsea@perkinscoie.com,LNelson@perkinscoie.com

- **Christopher L Ottele**
  chris.ottele@huschblackwell.com,ann.stolfa@huschblackwell.com,LegalSupportTeam-Litigation-DEN@huschblackwell.com

- **Steven J Pacini**
  steven.pacini@lw.com,chefiling@lw.com

- **Vanessa Soriano Power**
  vanessa.power@stoel.com,shelley.sasse@stoel.com,sea_ps@stoel.com,leslie.lomax@stoel.com,docketclerk@stoel.com

GEICO'S MOTION TO DISMISS - Page 20
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

- **Marguerite M Sullivan**
  marguerite.sullivan@lw.com,chefiling@lw.com

STOEL RIVES LLP


/s/ Vanessa Soriano Power
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com

Attorneys for Defendant GEICO General Insurance Company

GEICO'S MOTION TO DISMISS - Page 21
Case No. 3:19-cv-5823-BHS

Husch Blackwell, LLP
5060 North 40th Street, Suite 250
Phoenix, AZ 85018
480-824-7900

104133405.1 0065781-00004

# EXHIBIT 1



**Tel:** 1-800-841-3000

# Declarations Page
This is a description of your coverage.
Please retain for your records.

**GEICO GENERAL INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

## Policy Number: 4294-63-12-31
## Coverage Period:
01-26-18 through 07-26-18
12:01 a.m. local time at the address of the named insured.

Date Issued: December 23, 2017

RAYMOND EARL WILLIAMS II

Email Address:

| Named Insured | Additional Drivers |
|---|---|
| Raymond E Williams, II | None |

| Vehicles | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|
| 1 2007 Cad CTS | | | Twinstar Credit Union |
| 2 1995 Nissan Pkp/XE/SE | | | |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| Bodily Injury Liability | | | |
|   Each Person/Each Occurrence | $100,000/$200,000 | $86.10 | $68.80 |
| Property Damage Liability | $100,000 | $78.80 | $66.40 |
| Personal Injury Protection | Option B | $32.10 | $45.00 |
| Underinsured Motorist | | | |
|   Each Person/Each Occurrence | $100,000/$200,000 | $37.50 | $37.50 |
| Underinsured Motorist Property Damage | $50,000 | $27.20 | $27.20 |
| Comprehensive | $500 Ded | $28.30 | $9.50 |
| Collision | $500 Ded | $129.80 | $39.50 |
| Emergency Road Service | Full | $10.30 | $10.30 |
| Rental Reimbursement | $35 Per Day | – | $14.90 |
| | $1,050 Max | – | – |
| | $45 Per Day | $19.10 | – |
| | $1,350 Max | – | – |

| | | | |
|---|---|---|---|
| **Six Month Premium Per Vehicle** | | **$449.20** | **$319.10** |
| **Total Six Month Premium** | | | **$768.30** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

*0000142946312314603200543*

**Discounts**

| | |
|---|---:|
| **The total value of your discounts is** | **$315.10** |
| Seatbelt (All Vehicles) ........................................................................................................ | $13.50 |
| Multi-Car (All Vehicles) ........................................................................................................ | $172.10 |
| Anti-Lock Brakes (All Vehicles) ........................................................................................... | $8.90 |
| Anti-Theft Device (All Vehicles) .......................................................................................... | $4.20 |
| 5 Year Good Driving (All Vehicles) ...................................................................................... | $95.10 |
| Passive Restraint/Air Bag (Veh 1) ...................................................................................... | $21.30 |

**Contract Type:** A30WA
**Contract Amendments:** ALL VEHICLES - A30WA A54ED1 A54WA

**Unit Endorsements:** A115 (VEH 1,2); A135 (VEH 1,2); A431WA (VEH 1,2); UE77 (VEH 1)

The following forms for your policy are available to review online at geico.com/express:

| Form Name | Form Number (Revision Date) |
|---|---|
| Privacy Notice | M56M |
| Important Notice | VSP (06-12) |

You may view, save and print the forms listed above on our website. You will not receive a paper copy of the forms unless you request that we mail you a paper copy of any of the forms listed above at no cost by calling us at 1-800-841-3000.

---

## Important Policy Information

-Please review the front and/or back of this page for your coverage and discount information.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-We have a new rating program available. If you are interested in learning more, inquire at 1-888-601-0526.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

---



**Telephone: 1-800-841-3000**

# Washington Family Automobile Insurance Policy

# YOUR POLICY INDEX

## SECTION I - LIABILITY COVERAGES

### Your Protection Against Claims From Others

Definition of Terms .................................................. 3
Losses We Will Pay For You .................................... 3
Additional Payments We Will Make for You ............. 4
    Legal Expenses and Court Costs
    Bail and Appeal Bonds
    First Aid Expenses
Exclusions: When These Coverages Do Not Apply... 4
Persons Insured:  Who Is Covered .......................... 5
Financial Responsibility Laws ................................. 5
Out of State Insurance ............................................ 5
Limits of Our Liability For a Loss ............................ 5
Conditions .............................................................. 6
    Notice:  Reporting Your Loss If Suit is
      Brought Against You
    Two or More Automobiles Insured
      Under This Policy
    Your Assistance and Cooperation
    Action Against Us
    Subrogation

## SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

### Protection For You and Your Passengers for Medical Expenses

Definition of Terms .................................................. 6
Payments We Will Make  To Whom and When
    This Coverage Applies .......................................... 7
Exclusions: When This Coverage Does Not Apply.... 7
Limits of Our Liability For a Loss ............................. 7
Conditions .............................................................. 7
    Notice:  Reporting Your Loss
    Two or More Automobiles Insured Under
      This Policy
    Action Against Us
    Medical Reports
    Subrogation

## SECTION III - PHYSICAL DAMAGE COVERAGES

### Your Protection for Loss of or Damage to Your Car

Definitions of Terms ................................................ 8
Comprehensive Coverage ....................................... 9
Collision Coverage .................................................. 9
Additional Payments We Will Make For You ........... 9
Exclusions: When These Coverages Do Not Apply ..10
Limits of Our Liability For a Loss ........................... 10
Conditions ............................................................ 11
    Notice:  Reporting Your Loss
    Two or More Automobiles Insured Under
    This Policy

Your Assistance and Cooperation
Action Against Us
Your Duties in Event of Loss
Appraisal of Amount of Loss
Payment of Loss
No Benefit to Bailee
Subrogation

## SECTION IV - UNDERINSURED MOTORISTS COVERAGE

### Your Protection for Injuries Caused by Underinsured and Hit and Run Motorists

Definition of Terms ................................................. 12
Losses We Pay ...................................................... 13
Exclusions: When These Coverages Do Not Apply. 13
Limits of Our Liability For a Loss ........................... 13
Arbitration:  Resolving a Disagreement ................. 14
Trust Agreement:  Our Right of Recovery .............. 14
Conditions ............................................................ 14
    Notice: Reporting Your Loss
    Additional Duties
    Your Assistance and Cooperation
    Action Against Us
    Proof of Claim - Medical Reports
    Who Receives "Payment of Losses"

## SECTION V - GENERAL CONDITIONS

### The Following Apply to All Coverages in This Policy

Territory ................................................................ 15
Premium:  How Adjustments Are Made .................. 15
Changes to Your Policy .......................................... 15
Assignment of Your Interest in This Policy to
    Others .............................................................. 16
Cancellation of the Policy: ..................................... 16
    By You
    By Us
    By Us Is Limited
Renewal of Your Policy ........................................... 16
Other Insurance ..................................................... 17
Dividend Provisions ............................................... 17
Declarations:  Your Agreements ............................ 17
Fraud and Misrepresentation ................................. 17
Examination Under Oath ........................................ 17
State Statutes:  Conformity With Statutes ............. 17
Disposal of Vehicle ................................................ 17
Policy Period  ........................................................ 17
Choice of Law ....................................................... 17

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

Special Endorsement - United States
    Government Employees ...................................... 18

Whenever, "he," "his," "him," or "himself" appears in this policy, you may read "her," "she," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

---

**SECTION I**
**Liability Coverages**
**Your Protection Against Claims From Others**
**Bodily Injury Liability and Property Damage Liability**

---

## DEFINITIONS

The words italicized in Section I of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease, or death.

3. ***Farm auto*** means a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

4. ***Insured*** means a person or organization described under "persons insured."

5. ***Non-owned auto*** means an automobile or ***trailer*** not owned by or furnished for the regular use of either ***you*** or a ***relative***, other than a ***temporary substitute auto***. Except for a ***temporary substitute auto***, an auto rented or leased for more than 30 days will be considered as furnished for regular use.

6. ***Owned auto*** means:

   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A ***Trailer*** owned by ***you***;
   (c) A ***Private passenger***, ***farm*** or ***utility auto***, ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for a term of six months or more, if:

      (i) It replaces an ***owned auto*** as defined in (a) above; or
      (ii) We insure all ***private passenger***, ***farm*** and ***utility autos*** owned by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;

   (d) ***Temporary substitute auto***.

7. ***Private passenger auto*** means a four-wheel private passenger, station wagon, or jeep-type auto.

8. ***Relative*** means a person related to ***you*** who resides in ***your*** household. This includes ***your*** ward or foster child.

9. ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its:

   (a) Breakdown;
   (b) Repair;
   (c) Servicing;
   (d) Loss; or
   (e) Destruction.

10. ***Trailer*** means a trailer designed to be towed by a ***private passenger auto***, if not being used for business or commercial purposes with a vehicle other than a ***private passenger***, ***farm*** or ***utility auto***.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a G.V.W. of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. ***War*** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion, or revolution.

13. ***You*** and ***your*** mean the policyholder named in the declarations or his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:

1. ***Bodily injury*** sustained by a person, and

2. Damage to or destruction of property.

The **bodily injury** or damage or destruction to property must arise out of the:

(a) Ownership;
(b) Maintenance; or
(c) Use

of the **owned auto** or a **non-owned auto**.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an **insured** in a covered lawsuit.

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

   (a) Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer or deposit in court, the amount due under this coverage.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** or **non-owned auto**, not to exceed $250 per bail bond.

6. We will upon request by an **insured,** provide reimbursement for the following items:

   (a) Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.
   (c) All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

1. Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. **Bodily injury** or property damage caused intentionally by or at the direction of an **insured** is not covered.

3. We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy.

4. **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

5. **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered.

   However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' compensation law.

6. We do not cover **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend **you** if a suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you**.

7. We do not cover an **owned auto** while used by a person (other than **you** or a **relative**) when he is employed or otherwise engaged in the **auto business**.

8. A **non-owned auto** while maintained or used by any person is not covered while such person is employed or otherwise engaged in 1) any **auto business**; 2) any other business or occupation of any **insured**, except a **private passenger auto** used by **you** or **your** chauffeur or domestic servant while engaged in such other business.

   However, coverage does apply to a **non-owned private passenger auto** used by **you, your** chauffeur or a domestic servant, while engaged in the business of an **insured**.

9. We do not cover damage to:

   (a) Property owned, operated or transported by an **insured**; or
   (b) Property rented to or in charge of an **insured** other than a residence or private garage.

10. We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other automobile liability insurance for it.

11. We do not cover:

    (a) The United States of America or any of its Agencies;

    (b) Any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

12. **Bodily injury** or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

13. **Bodily injury** or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

14. We do not cover bodily injury or property damage that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

15. We do not cover liability assumed under any contract or agreement.

16. We do not cover **bodily injury** or property damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

17. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as **insureds** with regard to an **owned auto:**

1. **You** and **your relatives**;

2. Any other person using the auto with **your** permission. The actual use must be within the scope of that permission;

3. Any other person or organization for his or its liability because of acts or omissions of an **insured** under 1 or 2 above.

Section I applies to the following with regard to a **non-owned auto:**

1. (a) **You**;

    (b) **Your relatives** when using a **private passenger, utility,** or **farm auto,** or **trailer**.

    Such use by **you** or **your relatives** must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an **insured** under 1 above.

    The limits of liability stated in the declarations are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The **insured** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of **your** state, we agree to increase **your** coverages to the extent required of out-of state motorists by local law. This additional coverage will be reduced to the extent that **you** are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

4. For accidents which occur in Alaska, all court costs charged to an **insured** in a covered lawsuit, including attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule contested cases as specified in Alaska Rule of Civil Procedure 82(b) (1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss rendered.

If a judgment is rendered against **you** in excess of **your** liability policy limits, you will be responsible for attorney fees awarded in accordance with Alaska Rule of Civil Procure 82(b) (1) which exceed that which would be allowable under the schedule for contested cases if the judgment rendered was within **your** policy limit.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE

   As soon as possible after an occurrence written notice must be given us or our authorized agent stating:

   (a) The identity of the **insured**;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an **insured**, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

   When this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE **INSURED**

   The **insured** will cooperate and assist us, if requested:

   (a) In the investigation of the occurrence;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of **bodily injury** or property damage; and
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

   Only at his own cost will the **insured** make a payment, assume any obligation, or incur any cost other than for first aid to others.

4. ACTION AGAINST US

   We cannot be sued:

   (a) Unless the **insured** has fully complied with all the policy's terms and conditions, and
   (b) Until the amount of the **insured's** obligation to pay has been finally determined, either
      (i) By a final judgment against the **insured** after actual trial; or
      (ii) By written agreement of the **insured**, the claimant and us.

   A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

   No person or organization, including the **insured**, has a right under this policy to make us a defendant in an action to determine the **insured's** liability.

   Bankruptcy or insolvency of the **insured** or his estate will not relieve us of our obligations.

5. SUBROGATION

   When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery against others. After the **insured** has been fully compensated for his loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

   This means we have the right to sue for or otherwise recover the loss from anyone else who may be held responsible. The **insured** will do nothing after loss to prejudice these rights.

---

**SECTION II**
**Auto Medical Payments**
**Protection For You and Your Passengers For Medical Payments**

---

## DEFINITIONS

The definitions of terms shown under Section I apply to this coverage. In addition, under this coverage, **occupying** means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this coverage, we will pay all reasonable expenses for necessary:

    (a) Medical;
    (b) Surgical;
    (c) X-ray and
    (d) Dental services;
    (e) Prosthetic devices;
    (f) Ambulance;
    (g) Hospital;
    (h) Professional nursing; and
    (i) Funeral services

actually incurred by an *insured* within three years from the date of the accident.

This coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:

    (a) While *occupying* the *owned auto*; or
    (b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
    (c) When struck as a pedestrian by an auto or *trailer.*

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

    (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
    (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war.*

6. The United States of America or any of its Agencies are not covered as an *insured,* a third party beneficiary, or otherwise.

7. There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

8. There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents.

9. We do not cover *bodily injury* or property damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**CONDITIONS**

The following conditions apply to this coverage:

1. NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) The identity of the *insured*;
    (b) The time, place and details of the accident; and
    (c) The names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ACTION AGAINST US

   We cannot be sued unless the *insured* has fully complied with all the policy terms.

4. MEDICAL REPORTS-PROOF AND PAYMENT OF CLAIMS

   As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

   The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

   We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

5. SUBROGATION

   When we make a payment under this coverage we will have the right to bring suit or other action against any person or organization legally liable for the *bodily injury* to recover our payment. After the *insured* has been fully compensated for his loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

---

**SECTION III**
**Physical Damage Coverages**
**Your Protection For Loss or Damage To Your Car**

---

**DEFINITIONS**

The definitions of the terms *auto business, farm auto*, *private passenger auto, relative, temporary substitute auto, utility auto, you*, *yours,* and *war* under Section I apply to Section III also.

Under this Section, the following special definitions apply:

1. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

   *Losses* caused by the following are comprehensive *losses:*

   | | |
   |---|---|
   | (a) Missiles; | (j) Hail; |
   | (b) Falling objects; | (k) Water; |
   | (c) Fire; | (l) Flood; |
   | (d) Lightning; | (m) Malicious mischief; |
   | (e) Theft; | (n) Vandalism; |
   | (f) Larceny; | (o) Riot; |
   | (g) Explosion; | (p) Civil commotion; or |
   | (h) Earthquake; | (q) Colliding with a bird or animal. |
   | (i) Windstorm; | |

2. *Insured* means:

   (a) Regarding the *owned auto*:
      (i) *You* and *your relatives;*
      (ii) A person or organization maintaining, using, or having custody of the auto with *your* permission, if his use is within the scope of that permission.
   (b) Regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

3. *Loss* means direct and accidental loss of or damage to:

   (a) The auto, including its equipment; or
   (b) Other insured property.

4. *Non-owned auto* means a *private passenger, farm,* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

5. *Owned auto* means:

   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;

(b) A **private passenger**, **farm** or **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more; if

    (i) It replaces an **owned auto** as described in (a) above, or

    (ii) We insure all **private passenger**, **farm**, **utility autos** and **trailers** owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;

(c) A **temporary substitute auto**.

6. **Trailer** means a trailer designed for use with a **private passenger auto** and not used as a home, office, store, display or passenger trailer.

7. **Actual cash value** is the replacement cost of the auto or property, adjusted if appropriate, for **depreciation** or **betterment** and condition.

8. **Depreciation** means a decrease or **loss** in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

9. **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.

10. **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which;

(a) Are permanently installed or attached; or

(b) Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the owned auto or a newly acquired vehicle using bolts or brackets, including slide-out-brackets.

## LOSSES WE WILL PAY FOR *YOU*

### Comprehensive (Excluding Collision)

1. We will pay for each **loss,** less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**. This includes glass breakage.

No deductible will apply to **loss** caused by fire, lightning, smoke, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the **insured**, breakage of glass caused by **collision** may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for **loss** to personal effects due to:

(a) Fire;
(b) Lightning;
(c) Flood;
(d) Falling objects;
(e) Earthquake;
(f) Explosion; or
(g) Theft of the entire automobile.

The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

No deductible will apply due to **loss** by fire or lightning.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for **collision loss** to the **owned** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.

Reimbursement will not exceed $25.00 per day nor $750.00 per **loss**.

**EXCLUSIONS**

**When the Physical Damage Coverages Do Not Apply**

1.  An auto used to carry passengers or goods for hire is not covered.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2.  *Loss* due to *war* is not covered.

3.  We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4.  There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5.  Tires, when they alone are damaged by *collision*, are not covered.

6.  *Loss* due to radioactivity is not covered.

7.  *Loss* to any tape, wire, record disc, or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8.  We do not cover *loss* to any radar or laser detector.

9.  We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

10. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

11. There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents.

12. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

13. There is no coverage for any liability assumed under any contract.

14. There is no coverage for any *loss* from:

    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal, or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure, or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.

15. There is no coverage for the destruction, impoundment, confiscation, or seizure of a vehicle by governmental or civil authorities due to its use by *you,* a *relative* or permissive user of the vehicle in illegal activity.

16. There is no coverage for any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

The limit of our liability for  *loss*:

1.  Is the *actual cash value* of the property at the time of the  *loss*;

2.  Will not exceed the cost to repair or replace the property, or any of its parts, including parts from non-original equipment manufacturers, with others of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the  *loss*;

3.  To personal effects arising out of one occurrence is $200;

4.  To a *trailer* not owned by *you* is $500;

5.  For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

6.  Deductions for *betterment* and *depreciation* are permitted only for parts normally subject to repair and replacement during the useful life of the insured motor vehicle.  Deductions for  *betterment* and *depreciation* shall be limited to the lesser of an amount equal to the proportion that the expired life of the part to be repaired or replaced bears to the normal useful life of that part, or the amount which the resale value of the vehicle is increased by the repair or replacement.

7.  For glass repair or replacement, will not exceed the prevailing competitive price.  Although  *you* have the right to choose any glass repair facility or location, the limit of liability for loss to the window glass is the cost to repair or replace such glass but will not exceed the prevailing competitive price.  This is the price we can secure from a competent and conveniently located glass repair facility.  At  *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

***Actual cash value*** of property will be determined at the time of the ***loss*** and will include an adjustment for ***depreciation/betterment*** and for the physical condition of the property.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

   As soon as possible after a ***loss***, written notice must be given to us or our authorized agent stating:

   (a) The identity of the ***insured;***
   (b) A description of the auto or ***trailer***;
   (c) The time, place and details of the ***loss***; and
   (d) The names and addresses of any witnesses.

   In case of theft, the ***insured*** must promptly notify the police.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or ***trailers***, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE ***INSURED***

   The ***insured*** will cooperate and assist us, if requested:

   (a) In the investigation of the ***loss***;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

   We cannot be sued unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of ***loss*** is determined.

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If ***you*** ask us immediately after a loss to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. ***You*** may purchase salvage from us if you wish.

5. ***INSURED'S*** DUTIES IN EVENT OF ***LOSS***

   In the event of ***loss*** the ***insured*** will:

   (a) Protect the auto, whether or not the ***loss*** is covered by this policy. Further ***loss*** due to the ***insured's*** failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us within 91 days after ***loss***, his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the ***insured*** will exhibit the damaged property.

6. APPRAISAL

   If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

   Neither we nor the ***insured*** waive any of our rights under this policy by agreeing to an appraisal.

7. PAYMENT OF ***LOSS***

   We may at our option:

   (a) Pay for the ***loss***; or
   (b) Repair or replace the damaged or stolen property.

   At any time before the ***loss*** is paid or the property replaced, we may return any stolen property to ***you*** or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for ***loss*** either with the ***insured*** or the owner of the property.

8. NO BENEFIT TO BAILEE

   This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the ***loss*** of the auto.

9. SUBROGATION

When we make a payment under this coverage we will be subrogated to all the insured's rights of recovery against others. After the *insured* has been fully compensated for his *loss,* we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible. The *insured* will do nothing after a *loss* to prejudice these rights. The *insured* will help us to enforce these rights.

---

**SECTION IV**
**Underinsured Motorists Coverage**
**Protection For You and Your Passengers For Injuries Caused By Underinsured and Hit and Run Motorists**

---

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *Accident* means an occurrence that is unexpected and unintended from the standpoint of the *insured*.

2. *Hit-and-run vehicle* is one whose owner or operator cannot be identified and which makes physical contact with the *insured* or the vehicle which the *insured* is *occupying* at the time of the *accident*, resulting in *bodily injury* or *property damage* to an *insured.*

3. *Insured* means:
   (a) *You;*
   (b) A *relative;*
   (c) Any other person *occupying* an *owned auto*; or
   (d) Any person who is entitled to recover because of *bodily injury* or *property damage* sustained by an *insured* under (a), (b), and (c) above.

   If there is more than one *insured*, our limits of liability will not be increased.

4. *Insured Auto* means:
   (a) An auto described in the declarations; and
   (b) Covered by the bodily injury and property damage liability coverages of this policy;
   (c) A *temporarily substituted auto;* or
   (d) An auto operated by *you.*

5. *Phantom vehicle* means a motor vehicle which causes *bodily injury* or *property damage* to an *insured* and has no physical contact with the *insured* or the vehicle which the *insured* is *occupying* at the time of the accident.

6. *Property damage* means damage to or destruction of property.

7. *Occupying* means:
   (a) In;
   (b) Upon;
   (c) Entering into; or
   (d) Alighting from.

8. *Underinsured Motor Vehicle* means a land motor vehicle or *trailer:*
   (a) Which has no bodily injury and property damage liability bond or policy in effect at the time of the *accident*;
   (b) Which has a liability bond or insurance that applies at the time of the *accident* but the limits of that insurance are less than the amount the *insured* is legally entitled to recover for damages;
   (c) Whose insurer denies coverage;
   (d) Whose insurer is or becomes insolvent;
   (e) A *hit-and-run vehicle;* or
   (f) A *phantom vehicle*.

   If there is an accident involving a *phantom vehicle* the facts of the accident must be proven. We will accept competent evidence. We will not accept the testimony of the *insured* or that of any person having a claim under this coverage resulting from the accident.

   The term *Underinsured Motor Vehicle* does not include a vehicle or equipment:

   (a) Owned by or furnished or available for the regular use of *you* or a *relative*.
   (b) Operated on rails or crawler-treads.
   (c) Located for use as a residence or premises.
   (d) To which SECTION I-LIABILITY COVERAGES -of this policy applies. This exception to the definition of *underinsured motor vehicle* does not apply to *you* or any *relative* if *you* or any *relative* sustain damages while *occupying,* or when struck by a vehicle for which coverage under Section I of this policy applies.

9. **Bodily injury** means bodily injury, sickness, or disease, including death, sustained by **you, your relatives** or any other person **occupying** an **insured auto** with **your** consent.

## LOSSES WE WILL PAY

We will pay damages an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** due to:

1. **Bodily injury** sustained by that **insured** and caused by an **accident**; and

2. **Property damage** caused by an **accident** if entry is made in the Declarations to this policy that both bodily injury and property damage Underinsured Motorists Coverage applies.

   The liability of the owner or operator for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle.**

   The amount of the **insured's** recovery for damages will be determined by agreement between the **insured** or his representative and us.

   If an **insured** reaches a tentative agreement to settle his claim against any person or organization legally responsible for his injuries, that **insured** or his legal representative should notify us of the tentative settlement and give us a reasonable opportunity to protect our recovery rights.

## EXCLUSIONS

### When this coverage Does Not Apply

1. There is no coverage for **bodily injury** or **property damage** sustained by an **insured** while operating or **occupying** a motorcycle or a motor-driven cycle which is not insured under the Liability Coverage of this policy.

2. This coverage will not benefit any workers' compensation insurer, self-insurer or an insurer under a similar disability benefits law.

3. We do not cover the United States of America or any of its Agencies as an **insured**, a third party beneficiary or otherwise.

4. We do not cover any person while **occupying** a vehicle described in the declarations on which Underinsured Motorists coverage is not carried.

5. There is no coverage for **bodily injury** or **property damage** sustained by an **insured** while operating or **occupying** a motor vehicle owned by or available for the regular use of **you** or any family member and which is not **insured** under the Liability coverage of this policy.

6. This coverage does not apply to the first $100 ($300 if the damage is caused by a hit-and-run driver or **phantom vehicle**) of the total amount of all **property damage**.

7. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages assessed against an underinsured motorist.

8. **Bodily injury** or **property damage** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

9. **Bodily injury** or **property damage** that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

10. This coverage does not apply to any liability assumed under any contract or agreement.

11. This coverage does not apply to damage caused by an **insured's** participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

1. The limits for "each person" is the most we will pay as damages for **bodily injury,** including those for care and loss of services, to one person in one **accident**.

2. Subject to the limit for "each person," the limit for each **accident** is the most we will pay as damage for **bodily injury**, including those for care and loss of services, to two or more persons in one **accident**.

3. The limit for **property damage** is the most we will pay for damages to property in one **accident**. This limit is subject to the provision of Exclusion 6.

4. The maximum limits apply for each auto for which a premium is shown in the Policy declarations.

5. We will pay no more than these maximums regardless of the number of:

   (a) Autos or **trailers** to which this policy applies;
   (b) **Insureds;**
   (c) Claims;
   (d) Claimants or policies; or
   (e) Vehicles involved in the **accident**.

6. If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss. If this policy and any other policy providing Underinsured Motorists Coverage apply to the same **loss**, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy.

7. Any amounts otherwise payable for damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** or **property damage** shall be reduced by all sums:

   (a) Paid under SECTION I - LIABILITY COVERAGES - of this policy;
   (b) Paid under SECTION II - AUTO MEDICAL PAYMENTS COVERAGE - of this policy; or
   (c) Paid under Personal Injury Protection Amendment, if any, to this policy.

   The total damages will be reduced by any amount paid by or for all persons or organizations liable for the injury.

8. We will pay, up to the limits selected, any amount of damages for **bodily injury** which the named insured is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of **bodily injury** carried by the owner or the operator.

9. When payment is made under this coverage, no payment will be made for **loss** paid to an **insured** under SECTION III - PHYSICAL DAMAGE COVERAGES-of this policy.

   If a claim is made under this coverage and under the liability coverages section of this policy, the amount payable under the bodily injury and property damage coverages will be reduced by any amounts payable to the same claimant under this coverage.

10. For **accidents** which occur in Alaska, all court costs charged to an **insured** in a covered lawsuit, including attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule contested cases as specified in Alaska Rule of Civil Procedure 82(b) (1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss rendered.

## ARBITRATION: RESOLVING A DISAGREEMENT

1. If **you** and we do not agree whether **you** are legally entitled to recover damages under this coverage based upon the liability facts of the **accident** or to the proper amount of such damages, the dispute may be resolved:

   (a) In a binding, voluntary arbitration proceeding as described in paragraph 2 below, or
   (b) By civil lawsuit brought by **you** in a court of competent jurisdiction.

2. Unless we mutually agree otherwise, a voluntary arbitration shall be composed of a single arbitrator selected by mutual agreement. Arbitration services vendors may be consulted to facilitate the arbitration. If agreement cannot be reached on selection of an arbitrator, paragraph 1 (b) of this section shall apply. The cost of the arbitrator shall be paid by us. All other expenses of arbitration, including fees for attorneys and expert witnesses, shall be paid by the party who incurred them.

3. Any arbitration will be limited to issues in actual dispute but will not include disputes involving the existence or policy limits of Underinsured Motorists Coverage. The decision of the arbitrator shall be binding except that we will not pay any amount in excess of the applicable policy limits of this coverage.

## TRUST AGREEMENT

When we make a payment under the coverage:

1. We will be entitled to repayment out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury** or **property damage**. Our right applies only after the **insured** has been fully compensated for his loss.

2. To the extent of our payment, the **insured** will hold in trust for our benefit all his rights of recovery against any person or organization responsible for damages. He will do whatever is necessary to secure all rights of recovery. He will do nothing after the loss to prejudice these rights.

3. The **insured** will execute and give us all needed documents to secure his and our rights.

4. If the payment was caused by an insolvent insurer, our right of reimbursement shall not include any rights against the insured of that insolvent insurer for any amounts that would have been paid by the insolvent insurer. We have the right to proceed directly against the insolvent insurer or its receiver. In pursuing these rights, we shall have any rights which the insured of the insolvent insurer might otherwise have had if the insured of the insolvent insurer had personally made the payment.

## CONDITIONS

1. NOTICE

   As soon as possible after an **accident**, notice should be given to us or our authorized agent stating:

   (a) The identity of the **insured**;
   (b) The time, place and details of the accident;

(c) The names and addresses of the injured; and
(d) The names and addresses of any witnesses.

If the **insured** or his legal representative files suit before we settle under this coverage, he should immediately give us a copy of the suit papers.

2. ADDITIONAL DUTIES

If the **accident** involves a **hit-and-run vehicle** or **phantom vehicle,** the **insured** or someone on his behalf must:

(a) Notify the proper law enforcement agency within 72 hours for **accidents** involving a **phantom vehicle,**
(b) Promptly notify the police in all **accidents** with a **hit-and-run vehicle;**
(c) Claim a cause for action for damages against an unknown person; and
(d) Make available for our inspection, if requested, the auto occupied by the **insured** at the time of the **accident**.

3. ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we require the **insured** to take any reasonable and necessary action to preserve his recovery rights against any person or organization who may be legally responsible. If reasonable and necessary, the **insured** should make that person or organization a defendant in any action against us.

4. ACTION AGAINST US

We cannot be sued unless the **insured** or his legal representative has fully complied with all the policy terms.

5. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the **insured** or other person making claim shall give us written proof of claim. The proof will be under oath if we ask. The proof will include details:

(a) Of the type and extent of injuries;
(b) The type of treatment; and
(c) Other facts which may affect the amount payable.

The injured person shall submit to examination by doctors of our choice. Such examinations will be at our expense and as often as we may reasonably ask. If the **insured** becomes incapacitated or dies, his legal representative must, if we ask, authorize us to obtain medical reports and copies of records.

6. PAYMENT OF LOSS

Any amount due is payable:

(a) To the **insured;** or
(b) To his authorized representative; or
(c) To a parent or guardian if the **insured** is a minor; otherwise
(d) To a person authorized by law to receive the payment

---

## SECTION V
## General Conditions
## These Conditions Apply to All Coverages in This Policy

---

1. TERRITORY

This policy applies only to accidents, occurrences or **losses** during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When you dispose of, acquire ownership of, or replace a **private passenger**, **farm** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

If the classification, sub-classification or territory of any insured auto or operator changes, we will make any needed premium adjustments as of the date of the change and in accordance with our manuals. This paragraph applies to:

(a) Section I - Liability Coverages;
(b) Section II - Auto Medical Payments; and
(c) Section III - Physical Damage Coverages.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your** state.

The premium for each auto is based on the information we have in **your** file. **You** agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) That *you* will cooperate with us in determining if this information is correct and complete.
(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse if covered under the policy prior to your death. Until the expiration of the policy term, we will also cover;

(a) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties; and
(b) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If *you* cancel, the return premium will be computed pro-rata.

We will not refund any unearned premium amounting to $2.00 or less.

6. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. The notice will state the reason for cancellation.

We will mail this notice:

(a) At least 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due, or within the first 30 days after the contract has been in effect;
(b) At least 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

When we cancel, earned premium will be computed pro-rata. Payment or tender of unearned premium is not a condition of cancellation.

Any unearned premium will be refunded to *you* as soon as possible. It will be sent no later than 30 days after the date of our notice of cancellation.

We will not refund any unearned premium amounting to $2.00 or less.

7. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy to us or our agent; or
(b) *You* fail to pay any premium installment when due to us or our agent; or
(c) *You* or any customary operator has had his driver's license suspended or revoked during the policy period, or if a renewal, during the policy period or the 180 days immediately prior to the renewal date.

We have the right to modify any physical damage coverages under SECTION III by including a deductible not to exceed $100.

Our failure to cancel for any of the reasons above will not obligate us to renew the policy.

8. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 20 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of following conditions exist:

(a) *You* do not pay any premium as we require to renew this policy.
(b) *You* have informed us or our agent that *you* wish the policy to be canceled or not renewed.
(c) *You* do not accept our offer to renew.

9. OTHER INSURANCE

If the **insured** has other insurance against a loss covered by any Section of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle **you** do not own shall be excess over any other collectible insurance.

10. DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

11. DECLARATIONS

By accepting this policy, **you** agree that:

(a) The statements in **your** application and in the declarations are **your** agreements and representations;
(b) This policy is issued in reliance upon the truth of these representations; and
(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

12. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who intentionally conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time application is made; or
(b) At any time during the policy period; or
(c) In connection with the presentation or settlement of a claim.

13. EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

14. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of the State of Washington are amended to conform to those statutes.

15. DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an owned auto, any coverage provided by this policy for that vehicle will terminate on the date and at the time **you** do so.

16. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and your acceptance prior to the expiration date. Each period will begin and expire at 12:01AM local time at **your** address in the declarations.

17. CHOICE OF LAW

The policy and any amendment(s) and endorsements(s) are to be interpreted pursuant to the laws of the state of Washington.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS
## SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES

A.  Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using:

1.  Motor vehicles owned or leased by the United States Government or any of its Agencies, or

2.  Rented motor vehicles used for United States Government business, when such use is with the permission of the United States Government.  Subject to the limits described in paragraph B. below, we will pay sums  **you** are legally obligated to pay for damage to these vehicles.

B.  The following limits apply to this coverage:

1.  A $100 deductible applies to each occurrence.

2.  For vehicles described in A.1 above, our liability shall not exceed the lesser of the following:

    (a)  The **actual cash value** of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  Two months basic pay of the **insured;** or
    (d)  The limit of Property Damage liability coverage stated in the declarations.

3.  For vehicles described in A.2 above, our liability shall not exceed the lesser of the following:

    (a)  The **actual cash value** of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.


W. C. E. Robinson
Secretary

O.M. Nicely
President



# Automobile Policy Amendment

Policy Number:

**Your** policy is amended as follows:

**SECTION V - GENERAL CONDITIONS**
The condition for POLICY PERIOD is revised as follows:

Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date.  Each period will begin and expire as stated in the declarations.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President


*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES

### DEFINITIONS

The following definitions are revised as follows:

**3.** *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

**11.** *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**13.** *You* and *your* means the named insured shown in the declarations or his or her spouse or registered domestic partner if a resident of the same household. As used throughout this Policy, spouse includes a registered domestic partner or partner of a substantially similar same sex union formed in another state.

The following definitions are added:

**14.** *Personal vehicle sharing program* means any legal entity qualified to do business in any state that is engaged in the business of facilitating the sharing of private passenger motor vehicles for non-commercial use by individuals.

**15.** *Personal vehicle sharing* means the operation and use of a private passenger motor vehicle, by persons other than the vehicle's registered owner in connection with any *personal vehicle sharing program.*

**16.** *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

**17.** *Transportation network company* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3.** is revised as follows:

**3.** Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

### EXCLUSIONS

### When Section I Does Not Apply

The introduction sentence is revised as follows:

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Exclusion **1.** is revised as follows:

**1.** Section I does not apply, in excess of the minimum financial responsibility limits, to any vehicle used to carry goods for hire.

The following exclusions are added:

**18.** Section I does not apply to any vehicle:

    (a) used to carry persons for compensation or a fee; or

    (b) while being used for *ride-sharing.*

    However, a vehicle used in an ordinary car pool is covered.

**19.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any *personal vehicle sharing* facilitated by any *personal vehicle sharing program.*

## SECTION II - AUTO MEDICAL PAYMENTS

### EXCLUSIONS

Exclusion **1.** is revised as follows:

**1.** There is no coverage for **bodily injury** sustained by any occupant of an **owned auto**;

(a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) while being used for **ride-sharing**.

However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

**10.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any **personal vehicle sharing** facilitated by any **personal vehicle sharing program.**

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The definitions of **ride-sharing**, **transportation network company**, **personal vehicle sharing program** and **personal vehicle sharing** under Section I also apply to Section III.

Definition **6. Trailer** is replaced with:

**6.** **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

### LOSSES WE WILL PAY FOR *YOU*

**Comprehensive (Excluding Collision)** is revised as follows:

1. We will pay for each **loss,** less the applicable deductible, caused other than by **collision** to the **owned auto** or **non-owned auto**. This includes glass breakage.

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for **loss** to personal effects due to:

   |     |     |
   | --- | --- |
   | (a) Fire; | (d) Falling objects; |
   | (b) Lightning; | (e) Earthquake; |
   | (c) Flood; | (f) Explosion; or |
   |     | (g) Theft of the entire automobile. |

   The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### EXCLUSIONS

Exclusion **1.** is revised as follows:

**1.** Section III does not apply to an auto;

(a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) while being used for **ride-sharing**.

However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

**17.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any **personal vehicle sharing** facilitated by any **personal vehicle sharing program.**

### LIMITS OF LIABILITY

Item **2.** is revised as follows:

**2.** Will not exceed the prevailing competitive price to repair or replace the property at the time of **loss**, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the **loss**. Although **you** have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At **your** request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

Item **7.** is deleted.

**CONDITIONS**

Condition **10.** Assignment is added.

**10.** ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV - UNDERINSURED MOTORISTS COVERAGE**

**EXCLUSIONS**

The following exclusions are added:

**12.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any ***personal vehicle sharing*** facilitated by any ***personal vehicle sharing program.***

**13.** There is no coverage for ***bodily injury*** or ***property damage*** under this Section for any person or organization while an ***owned auto*** or ***non-owned auto***:

(a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) is being used for ***ride-sharing***.

However, a vehicle used in an ordinary car pool is covered.

**ARBITRATION: RESOLVING A DISAGREEMENT**

Arbitration: Resolving a Disagreement is deleted in its entirety.

**SECTION V – GENERAL CONDITIONS**

Condition 5. Cancellation By The Insured is revised as follows:

**5.** CANCELLATION BY THE ***INSURED***

***You*** may cancel this policy prospectively by:

(a) Giving us written notice by mail, fax or email,

(b) Surrendering the policy to us, or

(c) Giving us verbal notice.

Upon receiving notice of cancellation from ***you***, we will cancel the policy the later of the date the notice is received or the date ***you*** request the cancellation.

If ***you*** cancel, the return premium will be computed pro-rata.

We will not refund any unearned premium amounting to $2.00 or less.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

 **GEICO**

# Automobile Policy Amendment
## Emergency Road Service Coverage

Policy Number:

***Your*** policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an ***insured*** incurs for the ***owned*** or ***non-owned auto***, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

***You*** may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the ***insured*** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The ***insured*** need only sign a receipt at the time of service which authorizes the comp any to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the ***insured's*** expense.

**HIRED SERVICES**

The second method occurs when the ***insured*** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President



# Automobile Policy Amendment

Policy Number:

## Automobile Personal Injury Protection - Washington

We agree with **you** subject to all terms of this Amendment and to all policy provisions except as modified by this Amendment.

We will provide the following benefits for loss and expense incurred due to **bodily injury** caused by accident and arising out of the ownership, maintenance or use of an **automobile**:

1. **Medical and hospital benefits** to or for each **insured**.

2. Benefits for funeral expenses for each **insured**.

3. **Income continuation benefits** to or for each **insured** who at the time of the accident was usually engaged in an occupation for pay.

4. **Loss of services benefits** to **you** if **you** suffer **bodily injury** caused by an accident while **occupying** or while a **pedestrian** through being struck by an **automobile**.

## DEFINITIONS

The definitions of **bodily injury**, **non-owned auto, personal vehicle sharing program, personal vehicle sharing, relative, temporary substitute auto**, **transportation network company**, **war**, and **you** in **Section I** of the policy apply to this coverage. The following special definitions apply:

1. **Automobile** means a **passenger car** that is registered or principally garaged in this state other than:

    a) a farm type tractor or other self-propelled equipment designed for use principally off public roads ;

    b) a vehicle operated on rails or crawler treads;

    c) a vehicle located for use as a residence;

    d) a moped;

    e) a motor home.

2. **Income Continuation Benefits** means payments for the **insured's** loss of income from work because of **bodily injury** sustained by the **insured** in an automobile accident, less income earned during the benefit payment period. The combined weekly payment an **insured** may receive under personal injury protection, workers compensation, disability insurance, or other **income continuation benefits** may not exceed 85% of the **insured's** weekly income from work. The benefit payment period begins 14 days after the date of the automobile accident and ends at the earliest of the following:

    a) the date on which the **insured** is reasonably able to perform the duties of his or her usual occupation, or

    b) 54 weeks from the accident date, or

    c) the date of the **insured's** death.

3. **Insured** means:

    a) the named insured or a person who is a resident of the named insured's household and is either related to the named insured by blood, marriage, or adoption, or is the named insured's ward, foster child, or stepchild; or

    b) a person who sustains **bodily injury** caused by accident while:

    (i) **occupying** or using the **insured automobile** with the permission of the named insured; or

    (ii) a **pedestrian** accidentally struck by the **insured automobile.**

4. **Insured Automobile** means an **automobile** described on the declarations page of the policy.

5. **Loss of Services Benefits** means reimbursement for payment to others, not members of the **insured's** household, for expenses reasonably incurred for services in lieu of those the **insured** would usually have performed for his or her household without compensation, provided the services are actually rendered.

Reimbursement for loss of services ends on the earliest of the following:

a) the date on which the **insured** person is reasonably able to perform those services;
b) 52 weeks from the date of the automobile accident; or
c) the date of the **insured's** death.

6. **Medical and Hospital Benefits** means payments for all **reasonable and necessary expenses** incurred by or on behalf of the **insured** for injuries sustained as a result of an automobile accident for necessary:

   a) pharmaceuticals, eyeglasses, hearing aids, and prosthetic devices; and
   b) medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services

that are rendered by a licensed medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the **bodily injury** sustained in the accident. The medical treatment or diagnostic test must be consistent with the **insured's** clinically supported symptoms, diagnosis or indications, the treatment must be in accordance with the standards of good practice and standard professional treatment protocol, and must not include unnecessary testing or treatment.

Semi-private room charges are the most we will pay unless intensive care is medically required.

**Medical and hospital benefits** are payable for expenses incurred within three years from the date of the automobile accident.

7. **Occupying** means in or upon, entering into or alighting from.

8. **Passenger Car** means every motor vehicle, designed for carrying ten passengers or less and used for the transportation of persons, except motorcycles and motor-driven cycles.

9. **Pedestrian** means a natural person not **occupying** a motor vehicle.

10. **Reasonable and necessary expenses** means expenses that are the lowest of the following charges:

    a) The usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;
    b) The fee specified in any fee schedule:
       i) applicable to medical payments, no-fault coverage, personal injury protection coverage included in motor vehicle liability policies issued in the state where medical services are provided; and
       ii) as prescribed or authorized by the law of the state where medical services are provided;
    c) The fees agreed to by both the **insured's** health care provider and us; or
    d) The fees agreed upon between the **insured's** health care provider and a third party when we have a contract with such third party.

11. **Ride-sharing** means the use of any vehicle by any person in connection with a **transportation network company** from the time a person logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time a person logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

## COVERAGE LIMITS

Payments made under Personal Injury Protection Coverage are limited to the **reasonable and necessary expenses** incurred.  Regardless of the number of claims made or **insured automobiles** to which this coverage applies, our limits of liability under this coverage are as follows for each **insured** in any one accident:

**Option A**
1. **Medical and hospital benefits** of $35,000.
2. Funeral benefit of $2,000.
3. **Income continuation benefits** of $35,000, subject to a limit of $700 per week.
4. **Loss of services benefits** of $14,600. The maximum benefit is $40 per day.

**Option B**
1. **Medical and hospital benefits** of $10,000.
2. Funeral expense benefits of $2,000.
3. **Income continuation benefits** of $10,000 subject to a limit of $200 per week
4. **Loss of services benefits** of $5,000 subject to a limit of $200 per week. The maximum benefit is  $40 per day.

We will reduce any amount payable under this coverage by the amount paid or payable under any workers compensation, or similar medical or disability benefits law.

In determining payment made under Personal Injury Protection coverage, we have a right to:

1. Obtain and use peer reviews and medical bill reviews of medical services and expenses to determine if they are **reasonable and necessary expenses** for the **bodily injury** sustained;

2. Use medical examinations of the *insured* to determine if the *bodily injury* was caused by an automobile accident and whether the medical expenses and services are *reasonable and necessary expenses* for the *bodily injury* sustained;

3. Enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

## OTHER INSURANCE

If there is other Automobile Medical Payments or Automobile Personal Injury Protection for *medical and hospital benefits* insurance, we will not be liable for a greater part of any loss under this coverage than our limit of liability bears to the total limit of liability under applicable insurance. However, if the accident causing injury occurs while *occupying* or as a *pedestrian* through being struck by a *temporary substitute auto* or *non-owned auto*, this insurance shall be excess over any other valid and collectible Automobile Medical Payments or Automobile Personal Injury Protection insurance.

## EXCLUSIONS

1. There is no coverage to or for any person who intentionally injures himself or herself.

2. There is no coverage to or for any person injured while participating in any prearranged or organized racing or speed contest or in practice or preparation for such a contest.

3. There is no coverage for *bodily injury* due to war, whether or not declared, or to an act or condition incident to such circumstances.

4. There is no coverage for *bodily injury* resulting from radioactive, toxic, explosive, or other hazardous properties of nuclear material.

5. There is no coverage for *you* or a *relative* for injury suffered while *occupying* any *automobile* owned by *you* or furnished for *your* regular use if such motor vehicle is not described on the declaration page of the policy under which a claim is made.

6. There is no coverage for a *relative* while *occupying* an *automobile* owned by him or furnished for his regular use if such vehicle is not described on the declaration page of the policy under which a claim is made.

7. There is no coverage for an *insured* whose *bodily injury* results or arises from the *insured's* use of an automobile in the commission of a felony.

8. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of any *personal vehicle sharing* facilitated by any *personal vehicle sharing program*.

9. There is no coverage for any person while any motor vehicle is used for *ride-sharing*. This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

## CONDITIONS

The following special conditions apply to this coverage:

1. **Policy Period; Territory.**
   This coverage applies only to accidents occurring during the policy period, within the United States of America, its territories, possessions or Canada.

2. **Notice.**
   As soon as practicable after an accident, written notice must be given to us stating:
   a) the time, place and details of the accident; and
   b) the names and addresses of the *insureds*.
   If an *insured* or his legal representative files suit against a third party to recover damages for *bodily injury*, he must provide us with a copy of the pleadings.

3. **Action Against Us.**
   No action will lie against us unless there has been full compliance with all the terms of this coverage.

4. **Proof of Claim.**
   As soon as practicable, the *insured* or his representative must give us written proof of claim, under oath if required, and any other information that may assist us in determining the amount due and payable.

5. **Reports and Examinations.**
   Upon each request, the *insured* or, in the event of his incapacity or death, his legal representative, must authorize us to obtain medical reports, copies of records and loss of income information. For *income continuation benefits* and *loss of services benefits*, we may require the *insured* to cooperate in furnishing us with reasonable medical proof of his inability to work. The *insured* shall submit to examination at our expense, by doctors chosen by us, as we reasonably require.

6. **Trust Agreement.**
   If we make a payment under this coverage we will be entitled to recover the amount of our payment out of the proceeds of any settlement or judgment that the person to whom we made payment may recover from anyone who was legally liable for the *bodily injury*.

If the **insured**, or we, or both incur legal expenses in recovering payments which benefit both, the expenses will be divided in proportion to each party's share of the recovery. The person to whom we made payment will hold in trust for our benefit all rights of recovery which he may have against anyone because of the **bodily injury** and he will do whatever is necessary to secure his and our rights. The person shall deliver to us all instruments and papers necessary to secure his and our rights and obligations.

**7. Subrogation.**

When we make a payment under this coverage, we will be subrogated to all the **insured's** rights of recovery against others. After the **insured** has been fully compensated for his or her loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible. The **insured** will do nothing after a loss to prejudice these rights. The **insured** will help us to enforce these rights.

**8. Arbitration**.

If any person making claim under this coverage and we do not agree as to the amount payable, the dispute will be resolved:

a)  By binding, voluntary arbitration, if the person making the claim and we mutually agree to such arbitration; or
b)  By a civil lawsuit brought by an **insured** in a court of competent jurisdiction.

The arbitration shall commence within a reasonable period of time. Unless we mutually agree otherwise, a voluntary arbitration shall be composed of a single arbitrator selected by mutual agreement.

The arbitrator will then hear and determine the question(s) in dispute. Any arbitration will be limited to issues in actual dispute but will not include disputes involving the existence or policy limits of Personal Injury Protection Coverage. The written decision of the arbitrator shall be binding on the **insured** and us as to the amount of benefits payable under Personal Injury Protection. The arbitrator has no authority to award:

a)  Costs, expenses, interest or fees; or
b)  An amount in excess of the available Limit of Liability for Personal Injury Protection.

Attorney's fees and fees for expert witnesses are to be paid by the party incurring them. Both parties will share equally the cost of the arbitrator.

Unless both parties agree otherwise, the arbitration will be conducted in the county in which the **insured** resides or the county where the **insured** resided at the time of the accident. Relaxed rules of evidence shall apply, unless other rules of evidence are agreed to by the parties. The arbitration shall be conducted pursuant to arbitration rules similar to those of the American Arbitration Association, the Center for Public Resources, the Judicial Arbitration and Mediation Service, Washington Arbitration and Mediation Service Chapter 7.04 RCW, or any other rules of arbitration agreed to by the parties.

**9. Payment of Loss.**

We may, at our option, pay:

a)  the **insured**; or
b)  the parent or guardian of the **insured** if he is a minor; or
c)  the spouse, if the **insured** is incapacitated or deceased; or
d)  any person or organization who renders the services for the **insured**.

Any payment shall reduce the amount payable under this coverage. Payment of loss will not be an admission of liability to any person.

We will pay any personal injury protection benefits owed within 30 days after satisfactory proof of claim has been received by us.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President



# Automobile Policy Endorsement
## Rental Reimbursement Endorsement

Policy Number:

We agree with **you** that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

### Coverage-Rental Reimbursement

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the **owned auto**, we will reimburse the **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire **owned auto** covered under the comprehensive coverage of this policy; and

2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and

3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the **owned auto** has been:

1. Returned to **you**; or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
   (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
   (b) Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an **owned auto**, reimbursement for rental charges shall end the earliest of:

1. The date the **owned auto** is returned to use if the **owned auto** is recovered before payment of the total theft claim to **you** or the owner of the **owned auto**; or
2. If the vehicle is not recovered,
   (a) Seventy-two (72) hours after our initial settlement offer of the **actual cash value** of the **owned auto**.
   (b) Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire **owned auto**, the **insured** must promptly notify the police that the vehicle was stolen. To be eligible as a covered **loss**, the police report must acknowledge and classify the report as theft of a motor vehicle. The **insured** must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the **loss**.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-431WA (05-11)

# ENDORSEMENT

## LOSS PAYABLE ENDORSEMENT

## WASHINGTON

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Loss or damage, if any, under this policy shall be payable first to the loss payee or mortgagee (hereinafter called secured party), and, second, to the insured, as their interests may appear; PROVIDED, that, upon demand for separate settlement by the secured party, the amount of said loss shall be paid directly to the secured party to the extent of its interest.

This insurance as to the interest of the secured party shall not be invalidated by any act or neglect of the insured named in said policy or his agents, employees or representatives, nor by any change in the title or ownership of the insured property; PROVIDED, HOWEVER, that, the conversion, embezzlement or secretion by the named insured or his agents, employees or representatives is not covered under said policy unless specifically insured against and premiums paid therefor.

In applying the pro rata provisions of the policy, the amount payable to the secured party shall be reduced only to the extent of pro rata payments receivable by the secured party under other policies.

The Company reserves the right to cancel the policy at any time as provided by its terms, but in such case the Company shall mail to the secured party a notice stating when such cancellation shall become effective as to the interest of said secured party. The amount and form of such notice shall be not less than that required to be given the named insured, by law or by the policy provisions, whichever is more favorable to the secured party.

If the insured fails to render proof of loss within the time granted in the policy conditions, such secured party shall do so within sixty (60) days after having knowledge of a loss, in form and manner as provided by the policy, and, further, shall be subject to the provisions of the policy relating to appraisal and the time of payment and bringing suit.

Whenever the Company shall pay the secured party any sum for loss or damage under such policy and shall claim that, as to the insured, no liability exists, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all collateral held to secure the debt, or may, at its option, pay to the secured party the whole principal due or to grow due on the mortgage or other security agreement, with interest, and shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all collateral held to secure it; but no subrogation shall impair the right of the secured party to recover the full amount due it.

All terms and conditions of the policy remain unchanged except as herein specifically provided.

All notices sent to the secured party shall be sent to its last reported address, which must be stated in the policy or in this endorsement.

This endorsement forms a part of your policy. It is effective at 12:01 A.M. local time at your address on the effective date shown above.

## RETAIN THIS COPY FOR YOUR RECORDS

*00001000001*

# EXHIBIT 2

# HUSCH BLACKWELL

Ian M. Fischer

5060 N. 40th St., Suite 250
Phoenix, AZ 85018
Direct: 480.824.7885
Fax: 480.824.7905
ian.fischer@huschblackwell.com

October 8, 2019

**Via Email and U.S. Mail to:**
Steve W. Berman, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
steve@hbsslaw.com

**Via E-Mail only to:**
Robert B. Carey, Esq.
John M. DeStefano, Esq.
Elizabeth T. Beardsley, Esq.
Hagens Berman Sobol Shapiro LLP
rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

    Re:    *Raymond Williams v. GEICO General Insurance Company, et.al.*, United States District Court, Western District of Washington at Seattle, Case No. 3:19-cv-05823-BHS – Demand for Appraisal

Dear Counsel:

I am writing on behalf of GEICO General Insurance Company ("GEICO") to demand appraisal of the loss to the 2001 Cadillac CTS identified by Raymond Williams as damaged in 2018 in paragraph 46 of Mr. Williams' Complaint. GEICO's insurance policy with Mr. Williams, No. 4294-63-12-31, includes an appraisal provision that states:

> If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and

the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

Neither we nor the *insured* waive any of our rights under this policy by agreeing to an appraisal.

The Complaint makes it clear that you represent a GEICO insured who disagrees with the amount GEICO paid and Mr. Williams accepted for the 2001 Cadillac CTS identified in the Complaint. With this letter, GEICO demands an appraisal of the loss. In accordance with the foregoing provision, GEICO will identify its chosen appraiser, and would ask you to do the same on behalf of your client. Please respond confirming your agreement to the appraisal process no later than 5 PM on October 15, 2019.

Cordially,

Ian M. Fischer

# EXHIBIT 3

## Fischer, Ian

| | |
|---|---|
| **From:** | John DeStefano <johnd@hbsslaw.com> |
| **Sent:** | Tuesday, October 15, 2019 3:03 PM |
| **To:** | Fischer, Ian; Goldfine, Dan |
| **Cc:** | Collins, Veronnica; Steve Berman; Robert Carey; Tory Beardsley |
| **Subject:** | RE: Williams v. GEICO General Insurance Company |

[EXTERNAL EMAIL]

Ian,

We have received your letter dated October 8, 2019, regarding GEICO's demand for an appraisal. Plaintiff agrees to proceed with an appraisal in accordance with his GEICO insurance policy. No waiver is intended by this agreement. Mr. Williams reserves all rights under his GEICO insurance policy and the laws of the State of Washington, including but not limited to his claims of breach of contract, bad faith, and consumer deception against GEICO.

Regards,
John

John DeStefano | **Hagens Berman Sobol Shapiro LLP |** Direct: (602) 224-2628

**From:** Collins, Veronnica [mailto:Veronnica.Collins@huschblackwell.com]
**Sent:** Tuesday, October 8, 2019 4:15 PM
**To:** Steve Berman <Steve@hbsslaw.com>; Robert Carey <rob@hbsslaw.com>; John DeStefano <johnd@hbsslaw.com>; Tory Beardsley <toryb@hbsslaw.com>
**Cc:** Fischer, Ian <Ian.Fischer@huschblackwell.com>; Goldfine, Dan <Dan.Goldfine@huschblackwell.com>
**Subject:** Williams v. GEICO General Insurance Company

Counsel,
Attached please find correspondence from Ian Fischer with regard to the above referenced matter.
Thanks,

**Veronnica Collins**
**Legal Administrative Assistant**

**HUSCH BLACKWELL LLP**
5060 N. 40th St.,
Suite 250
Phoenix, AZ 85018
Direct: 480.824.7889
Fax: 480.824.7905
Veronnica.Collins@huschblackwell.com
huschblackwell.com

# EXHIBIT 4

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals.

## We'll get you back on the road fast!

The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar*
*or call 877-638-4126*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.



# MARKET VALUATION REPORT

*Prepared for GEICO*

## REPORT SUMMARY

 **CLAIM INFORMATION**

| | |
|---|---|
| Owner | Williams, Raymond |
| | ██████████████ |
| Loss Vehicle | 2007 Cadillac CTS |
| Loss Incident Date | 02/20/2018 |
| Claim Reported | 03/01/2018 |

**INSURANCE INFORMATION**

| | |
|---|---|
| Report Reference Number | 87838335 |
| Claim Reference | 0464800050101049-01 |
| Adjuster | A77a |
| Appraiser | Campbell, Jessica |
| Odometer | 70,631 |
| Last Updated | 03/06/2018 12:01 PM |

 **VALUATION SUMMARY**

| | |
|---|---|
| **Base Vehicle Value** | **$ 6,886.00** |
| Condition Adjustment | + $ 6.00 |
| Refurbishments | + $ 165.00 |
| **Adjusted Vehicle Value** | **$ 7,057.00** |
| Vehicular Tax (8.7%) | + $ 613.96 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 7,670.96** |
| Deductible | - $ 500.00 |
| **Total** | **$ 7,170.96** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 42% fewer than average mileage of 122,300.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology............................2
Vehicle Information.................................3
Vehicle Condition..................................7
Comparable Vehicles.............................9
Valuation Notes.....................................14
Supplemental Information.....................15

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# VALUATION METHODOLOGY

**How was the valuation determined?**



### CLAIM INSPECTION

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | ▮▮▮▮▮▮▮▮▮▮ |
| VIN | ▮▮▮▮▮▮▮▮ |
| Year | 2007 |
| Make | Cadillac |
| Model | CTS |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 6 |
| Displacement | 2.8L |
| Fuel Type | Gasoline |
| Carburation | - TBD - |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3509 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Package 1: Sport | | + 52 |
| Package 2: Luxury | | + 155 |
| **Odometer** | 70,631 | + 1,378 |

**Options**

| | | |
|---|---|---|
| Automatic Transmission | Reported | + 216 |
| 6 Speed Transmission | Not Present | - 216 |
| Power Passenger Seat | Package 2 | + 43 |
| Memory Package | Package 2 | + 36 |
| Home Link | Package 2 | + 22 |
| Heated Seats | Package 2 | + 86 |
| Aluminum/Alloy Wheels | Package 2 | - 86 |
| Chrome Wheels | Reported | + 129 |
| Electric Glass Roof | Reported | + 259 |
| Positraction | Package 1 | + 22 |
| Hands Free | Reported | + 43 |
| Xenon Headlamps | Package 1 | + 18 |
| Alarm | Package 2 | + 65 |
| Stability Control | Package 1 | + 34 |
| Aftermarket Film Tint | Reported | + 22 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


 VEHICLE INFORMATION

**VEHICLE HISTORY SUMMARY**

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| Insurance Services Organization/ National Insurance Crime Bureau | 3 Records Found |
| National Highway Traffic Safety Administration | 4 Recalls |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

 # VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Package 1:** | Sport | |
| **Package 2:** | Luxury | |
| **Odometer** | 70,631 | |
| **Transmission** | Automatic Transmission | 🗒 |
| | Overdrive | ✓ |
| **Power** | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | 🗒 |
| | Power Trunk/Gate Release | ✓ |
| **Decor/Convenience** | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | ✓ |
| | Memory Package | 🗒 |
| | Keyless Entry | ✓ |
| | Home Link | 🗒 |
| | Wood Interior Trim | 🗒 |
| **Seating** | Bucket Seats | ✓ |
| | Reclining/Lounge Seats | 🗒 |
| | Leather Seats | ✓ |
| | Heated Seats | 🗒 |
| **Radio** | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |

To the left is the equipment of the loss vehicle that GEICO provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗒 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


 # VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | CD Player | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Satellite Radio | ✔ |
| **Wheels** | Chrome Wheels | 🗐 |
| **Roof** | Electric Glass Roof | 🗐 |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Positraction | 🗐 |
| | Communications System | ✔ |
| | Hands Free | 🗐 |
| | Xenon Headlamps | 🗐 |
| | Alarm | 🗐 |
| | Traction Control | ✔ |
| | Stability Control | 🗐 |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Body Side Moldings | 🗐 |
| | Aftermarket Film Tint | 🗐 |
| | Fog Lamps | ✔ |
| | Clearcoat Paint | 🗐 |
| **Other - Cars** | California Emissions | 🗐 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


#  VEHICLE CONDITION/REFURBISHMENTS

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE PRIVATE | **Notes:** seepage/road grime present<br>**Guideline:**<br>**Transmission:** Fluid slightly discolored. A few areas of seepage.<br>**Engine:** Few small leaks. Belts and hoses firm, show minimal wear. Significant dirt and grease in engine compartment. | $ 0 |
| Tires | ROUGH | **Notes:** fronts measure 2/32 right rear 4/32 left rear 4/32 27%<br>**Guideline:**<br>**Rear Tires:** 40% or less of new. Example: Typical new car tires are 11/32, loss measures at 3/32 = 28% (3/11)<br>**Front Tires:** 40% or less of new. Example: Typical new car tires are 11/32, loss measures at 3/32 = 28% (3/11) | - $ 72 |
| New Tires | | Purchase Price : $ 496.00 | $ 143 |
| Paint | AVERAGE PRIVATE | **Notes:** swirl marks all over vehicle light fading<br>**Guideline:**<br>Few small deep chips and/or scratches. No significant peeling and/or flaking. Minor swirl marks. Slight Fading. | $ 0 |
| Body | AVERAGE PRIVATE | **Notes:** chrome on wheels is stating to corrode compression rear bumper<br>**Guideline:**<br>**Sheet Metal:** Few dents and/or numerous dings. No significant surface rust.<br>**Trim:** Minimal damage to components. Few dents and/or numerous dings. | $ 0 |
| Glass | AVERAGE PRIVATE | **Notes:** pitting<br>**Guideline:**<br>Light surface scratches and/or pitting. Few chips. | $ 0 |

GEICO uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

GEICO also identifies the after factory options and upkeep dollars invested into the loss vehicle that were brought to its attention. CCC makes dollar adjustments that reflect the impact, if any, these items have on the value of the vehicle. The total of these adjustments is shown in the Valuation Summary as Refurbishments.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


#  VEHICLE CONDITION/REFURBISHMENTS

## COMPONENT CONDITION

|  | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Seats | DEALER RETAIL | **Notes:** some wear/stains present minimal for year of vehicle<br>**Guideline:**<br>Clean. No significant tears, holes and/or burn marks. No significant wear. No bare spots. Lightly worn primarily in driver's area. | $ 21 |
| Carpets | AVERAGE PRIVATE | **Notes:** stains/wear present, heaviest on front section of floor<br>**Guideline:**<br>Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | DEALER RETAIL | **Notes:** minimal scuffing/marks for age of vehicle<br>**Guideline:**<br>Few small scratches and/or gouges. Minimal damage to components. Light wear. | $ 57 |
| Headliner | AVERAGE PRIVATE | **Notes:** stains/marks<br>**Guideline:**<br>Few small holes and/or burn marks. Lightly scuffed. | $ 0 |
| Maintenance Item | | Purchase Price : $ 192.00 | $ 22 |
| **Total Condition Adjustments** | | | **$ 6** |


# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Luxury | ✓ | ✗ | ✗ | ✗ |
| Sport | ✗ | ✗ | ✗ | ✓ |
| Sport | ✗ | ✗ | ✗ | ✓ |
| Odometer | 70,631 | 75,704 | 111,008 | 85,633 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Overdrive | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✓ | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✗ | ✗ | ✗ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✓ | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✗ | ✗ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Premium Radio | ✗ | ✗ | ✗ | ✓ |
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| CD Changer/Stacker | ✗ | ✗ | ✗ | ✓ |
| Aluminum/Alloy Wheels | ✗ | ✓ | ✓ | ✓ |

**Comp 1**    Updated Date: 12/18/2017
**2007 Cadillac Cts 6 2.8l Gasoline - Tbd -**
**VIN** 1G6DM57T270107485
**Dealership** Tred.com
**Telephone** (855) 267-8733
**Source** Autotrader
**Stock #** ByBHepH-f
**Distance from Battle Ground, WA**
19 Miles - Portland, OR

**Comp 2**    Updated Date: 01/11/2018
**2007 Cadillac Cts 6 3.6l Gasoline Sfi**
**VIN** 1G6DP577X70173549
**Dealership** Kingz Auto
**Telephone** (503) 927-0459
**Source** Dealer Ad
**Stock #** 0173549
**Distance from Battle Ground, WA**
16 Miles - Portland, OR

**Comp 3**    Updated Date: 12/20/2017
**2007 Cadillac Cts 6 3.6l Gasoline Sfi**
**VIN** 1G6DP577770183892
**Dealership** Mercedes-benz Of Beaverto
**Telephone** (855) 797-8824
**Source** Autotrader
**Stock #** 70183892T
**Distance from Battle Ground, WA**
23 Miles - Portland, OR

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, but may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

[1]The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Chrome Wheels | ✔ | ✘ | ✘ | ✘ |
| Electric Glass Roof | ✔ | ✘ | ✘ | ✔ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✘ | ✘ | ✔ |
| Communications System | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✘ | ✘ | ✘ |
| Xenon Headlamps | ✔ | ✘ | ✘ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✘ | ✘ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✘ | ✘ | ✘ |
| Tinted Glass | ✘ | ✔ | ✔ | ✔ |
| Aftermarket Film Tint | ✔ | ✘ | ✘ | ✘ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| California Emissions | ✔ | ✘ | ✘ | ✔ |

| List Price | | $ 6,569 | $ 5,500 | $ 7,200 |
|---|---|---|---|---|

| Adjustments: | | | | |
|---|---|---|---|---|
| | Package | + $ 207 | + $ 207 | + $ 155 |
| | Make/Model/Trim | | - $ 500 | - $ 500 |
| | Options | + $ 441 | + $ 441 | - $ 389 |
| | Mileage | + $ 123 | + $ 1,016 | + $ 364 |
| | Condition¹ | - $ 596 | - $ 596 | - $ 596 |

| Adjusted Comparable Value | | $ 6,744 | $ 6,068 | $ 6,234 |
|---|---|---|---|---|

| Options | Loss Vehicle | Comp 4 | Comp 5 |
|---|---|---|---|
| Luxury | ✔ | ✘ | ✘ |
| Sport | ✔ | ✘ | ✘ |
| Odometer | 70,631 | 134,368 | 57,553 |
| Automatic Transmission | ✔ | ✔ | ✔ |

**Comp 4**   Updated Date: 01/27/2018
**2007 Cadillac Cts 6 3.6l Gasoline Sfi**
**VIN** 1G6DP577770162637
**Dealership** Eastside Auto Sales Inc.
**Telephone** (503) 775-4252
**Source** Autotrader
**Stock #** 14800

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 |
|---|---|---|---|
| Overdrive | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✘ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ |
| Overhead Console | ✘ | ✘ | ✔ |
| Memory Package | ✔ | ✔ | ✘ |
| Navigation System | ✘ | ✔ | ✘ |
| Keyless Entry | ✔ | ✔ | ✔ |
| Home Link | ✔ | ✔ | ✘ |
| Wood Interior Trim | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ |
| Leather Seats | ✔ | ✔ | ✔ |
| Heated Seats | ✔ | ✔ | ✘ |
| AM Radio | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✘ | ✔ | ✘ |
| Premium Radio | ✘ | ✔ | ✘ |
| Satellite Radio | ✔ | ✔ | ✔ |
| CD Changer/Stacker | ✘ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✘ | ✔ | ✔ |
| Chrome Wheels | ✔ | ✘ | ✘ |
| Electric Glass Roof | ✔ | ✔ | ✔ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ |

**Distance from Battle Ground, WA**
21 Miles - Portland, OR
**Comp 5**    Updated Date: 01/22/2018
**2007 Cadillac Cts 6 3.6l Gasoline Sfi**
**VIN** 1G6DP577470112259
**Dealership** Lanphere Auto Group
**Telephone** (503) 755-5323
**Source** Autotrader
**Stock #** T2271A
**Distance from Battle Ground, WA**
24 Miles - Beaverton, OR

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance**  is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment**  sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 |
|---|---|---|---|
| Passenger Air Bag | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✔ | ✘ |
| Communications System | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✘ | ✘ |
| Xenon Headlamps | ✔ | ✔ | ✘ |
| Alarm | ✔ | ✔ | ✘ |
| Traction Control | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✘ |
| Dual Mirrors | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✘ | ✔ |
| Tinted Glass | ✘ | ✔ | ✔ |
| Aftermarket Film Tint | ✔ | ✘ | ✘ |
| Fog Lamps | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ |
| California Emissions | ✔ | ✘ | ✔ |

| **List Price** | | $ 6,995 | $ 8,860 |
|---|---|---|---|
| **Adjustments:** | | | |
| | Package | + $ 207 | + $ 207 |
| | Make/Model/Trim | - $ 500 | - $ 500 |
| | Options | - $ 411 | + $ 261 |
| | Mileage | + $ 1,731 | - $ 317 |
| | Condition[1] | - $ 596 | - $ 596 |
| **Adjusted Comparable Value** | | **$ 7,426** | **$ 7,915** |

#  COMPARABLE VEHICLES

## COMPARABLE VEHICLE CONTRIBUTION

| | Source | Comparable Vehicle | Price | Adjusted Comp Value | % of Base Vehicle Value |
|---|--------|--------------------|-------|---------------------|-------------------------|
| 1 | Verified | **2007 Cadillac Cts 6 2.8l Gasoline - Tbd -** | $ 6,569 (List) | $ 6,744 | 23 % |
| 2 | Verified | **2007 Cadillac Cts 6 3.6l Gasoline Sfi** | $ 5,500 (List) | $ 6,068 | 20 % |
| 3 | Verified | **2007 Cadillac Cts 6 3.6l Gasoline Sfi** | $ 7,200 (List) | $ 6,234 | 19 % |
| 4 | Verified | **2007 Cadillac Cts 6 3.6l Gasoline Sfi** | $ 6,995 (List) | $ 7,426 | 17 % |
| 5 | Verified | **2007 Cadillac Cts 6 3.6l Gasoline Sfi** | $ 8,860 (List) | $ 7,915 | 22 % |
| **Base Vehicle Value** | | | **$ 6,886.00** | | |

The following comparable vehicle(s) were used to determine this Base Vehicle Value. The listed % of Base Vehicle Value displays what percentage the comparable vehicle contributed to the Base Vehicle Value as described in the Valuation Methodology section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



# VALUATION NOTES

03/06/2018 12:01 - POADJ CHANGE REQUESTED BY: DORSEY,NICHOLAS

03/06/2018 12:01 - Refurbishment New Tires Changed: Purchase Price Old: NIL
Purchase Price New: $496.00 Mileage Old: NIL Mileage New: 0 Number of Tires Old: NIL
Number of Tires New: 4 Type Old: NIL Type New: 4 Tires

03/06/2018 12:01 - Refurbishments changed after request Disposed

03/06/2018 12:00 - POADJ CHANGE REQUESTED BY: DORSEY,NICHOLAS

03/06/2018 12:00 - Refurbishment Maintenance Item Changed: Purchase Price Old: NIL
Purchase Price New: $192.00 Mileage Old: NIL Mileage New: 0 Date Old: NIL Date New:
10/01/2017 Type Old: NIL Type New: Standard

03/06/2018 12:00 - Refurbishments changed after request Disposed

This Market Valuation Report has been prepared exclusively for use by GEICO, and no
other person or entity is entitled to or should rely upon this Market Valuation Report and/or
any of its contents. CCC is one source of vehicle valuations, and there are other valuation
sources available.

Regulations concerning vehicle value
include Washington Administrative
Code 284-30. It is a crime to knowingly
provide false, incomplete, or misleading
information to an insurance company
for the purpose of defrauding
the company. Penalties include
imprisonment, fines, and denial of
insurance benefit.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


# SUPPLEMENTAL INFORMATION

 **CARRIER INFORMATION**

**Prepared for:**     GEICO

**Web:**              Get back on the road fast!

GEICO offers an easy-to-use service designed to help you save time and money.

Simply visit www.geico.com/replaceyourcar today or call

(877)-638-4119 to get started!!

**VEHICLE HISTORY INFORMATION**

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**ISO Vehicle History:**

| | |
|---|---|
| **Number of times reported to ISO:** | 3 |
| **ISO's file number:** | H0269796642 |
| Loss date: | 04/16/2013 |
| Phone: | 8007295201 |
| Claim ref: | 0464800050101015 |
| ISO notified: | 02/26/2018 |
| Loss date: | 08/03/2014 |
| Phone: | 8007295201 |
| Claim ref: | 0464800050101023 |
| Loss date: | 02/20/2018 |
| Phone: | 4259811417 |
| Claim ref: | 0464800050101049 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✓ No Abandoned Record Found |
| Damaged | ✓ No Damaged Record Found |
| Fire Damage | ✓ No Fire Damage Record Found |
| Grey Market | ✓ No Grey Market Record Found |
| Hail Damage | ✓ No Hail Damage Record Found |
| Insurance Loss | ✓ No Insurance Loss Record Found |
| Junk | ✓ No Junk Record Found |
| Rebuilt | ✓ No Rebuilt Record Found |
| Salvage | ✓ No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✓ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ No Frame Damage Record Found |
| Major Damage Incident | ✓ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ No Odometer Problem Record Found |
| Recycled | ✓ No Recycled Record Found |
| Water Damage | ✓ No Water Damage Record Found |
| Salvage Auction | ✓ No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | ✓ No Accident Record Found |
| Corrected Title | ✓ No Corrected Title Record Found |
| Driver Education | ✓ No Driver Education Record Found |
| Fire Damage Incident | ✓ No Fire Damage Incident Record Found |
| Lease | ✓ No Lease Record Found |
| Lien | ✓ No Lien Record Found |
| Livery Use | ✓ No Livery Use Record Found |
| Government Use | ✓ No Government Use Record Found |
| Police Use | ✓ No Police Use Record Found |
| Fleet | ✓ No Fleet Record Found |
| Rental | ✓ No Rental Record Found |
| Fleet and/or Rental | ✓ No Fleet and/or Rental Record Found |
| Repossessed | 🔲 Repossessed Record Found |
| Taxi use | ✓ No Taxi use Record Found |
| Theft | ✓ No Theft Record Found |
| Fleet and/or Lease | ✓ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ No Duplicate Title Record Found |

CCC provides GEICO information reported by Experian regarding the **2007 Cadillac CTS** ▮▮▮▮▮▮▮▮ ). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

✓ No Event Found

⊖ Event Found

🔲 Information Needed

**TITLE CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**

INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 03/06/2018**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/08/2006 | NAMPA, ID | 16 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/10/2006 | NAMPA, ID | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/06/2007 | NAMPA, ID | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/20/2008 | NAMPA, ID | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/22/2008 | NAMPA, ID | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/22/2009 | NAMPA, ID | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/25/2010 | PACIFIC NW REGION, | 45360 | Auto Auction | REPORTED AT AUTO AUCTION |
| 01/25/2010 | DESERT SOUTHWEST REGION, | 45360 | Auto Auction | AUCTION ANNOUNCED AS REPOSSESSED |
| 04/27/2010 | VANCOUVER, WA | 45930 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 04/27/2010 | VANCOUVER, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/29/2010 | PACIFIC NW REGION, | 46452 | Auto Auction | REPORTED AT AUTO AUCTION |
| 07/12/2010 | PACIFIC NW REGION, | 46452 | Auto Auction | AUCTION ANNOUNCED AS REPOSSESSED |
| 10/28/2010 | BATTLE GROUND, WA | 46567 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 01/14/2011 | BATTLE GROUND, WA | 47589 | Motor Vehicle Dept. | TITLE |
| 03/17/2011 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/25/2013 | KENT, WA | | State Agency | PASSED EMISSION INSPECTION |
| 01/31/2013 | BATTLE GROUND, WA | 50800 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 01/31/2013 | BATTLE GROUND, WA | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 02/07/2013 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/28/2014 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/27/2015 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |


# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 02/04/2016 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/04/2016 | KENT, WA | | State Agency | PASSED EMISSION INSPECTION |
| 02/28/2017 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/21/2018 | BATTLE GROUND, WA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 4 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 07V468000

**Mfg's Report Date :** OCT 03, 2007

**Component :** STRUCTURE:BODY:ROOF AND PILLARS

**Potential Number Of Units Affected :** 9648

**Summary :** CERTAIN VEHICLES FAIL TO COMPLY WITH THE REQUIREMENTS OF FEDERAL MOTOR VEHICLE SAFETY STANDARD NO. 1008, 'POWER OPERATED WINDOW, PARTITION, AND ROOF PANEL SYSTEMS.' UNDER THE STANDARD, THE SUNROOF MAY ONLY BE CLOSED WHEN THE IGNITION IS ON, OR AFTER THE IGNITION IS TURNED OFF, BUT BEFORE EITHER OF THE FRONT DOORS ARE OPENED. THE AFFECTED VEHICLES MAY EXHIBIT A CONDITION WHERE THE SUNROOF CAN BE CLOSED AFTER THE IGNITION IS TURNED OFF AND THE DOORS ARE OPENED.

**Consequence :** THIS STANDARD SPECIFIES REQUIREMENTS FOR POWER OPERATED WINDOW, PARTITION, AND ROOF PANEL SYSTEMS TO MINIMIZE THE LIKELIHOOD OF DEATH OR INJURY FROM THEIR ACCIDENTAL OPERATION.

**Remedy :** DEALERS WILL INSTALL A WIRE HARNESS. THE MANUFACTURER HAS NOT YET PROVIDED A RECALL NOTIFICATION SCHEDULE FOR THIS CAMPAIGN. OWNERS MAY CONTACT CADILLAC AT 1-866-982-2339.

**Notes :** GM RECALL NO. 07149. CUSTOMERS MAY ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S VEHICLE SAFETY HOTLINE AT 1-888-327-4236 (TTY 1-800-424-9153), OR GO TO HTTP://WWW.SAFERCAR.GOV.

---

**NHTSA Campaign ID :** 07V589000

**Mfg's Report Date :** DEC 19, 2007

**Component :** SUSPENSION:REAR:AXLE:SPINDLE

**Potential Number Of Units Affected :** 275936

**Summary :** ON CERTAIN PASSENGER VEHICLES, THE REAR AXLE PINION SEAL DOES NOT MEET ALL OF THE SPECIFICATIONS AND MAY EXPERIENCE A FLUID LEAK.

**Consequence :** A REAR DIFFERENTIAL FAILURE MAY CAUSE LOSS OF MOTIVE POWER AND POSSIBLY LOSS OF CONTROL INCREASING THE RISK OF A CRASH.

**Remedy :** DEALERS WILL REPLACE THE PINION SEAL FREE OF CHARGE. THE RECALL IS EXPECTED TO BEGIN DURING FEBRUARY 2008. OWNERS MAY CONTACT CADILLAC AT 1-800-982-2339, PONTIAC AT 1-800-620-7668 AND SATURN AT 1-800-972-8876.

**Notes :** GM RECALL NO. N070204. CUSTOMERS MAY ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S VEHICLE SAFETY HOTLINE AT 1-888-327-4236 (TTY 1-800-424-9153), OR GO TO HTTP://WWW.SAFERCAR.GOV.

---

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

**NHTSA Campaign ID :** 10V105000

**Mfg's Report Date :** MAR 15, 2010

**Component :** SERVICE BRAKES, HYDRAULIC:FOUNDATION COMPONENTS:HOSES, LINES/PIPING, AND FITTINGS

**Potential Number Of Units Affected :** 139131

**Summary :** GENERAL MOTORS HAS NOTIFIED NHTSA OF A DEFECT IN CERTAIN MODEL YEAR 2003-2007 CADILLAC CTS VEHICLES CURRENTLY REGISTERED IN OR ORIGINALLY SOLD IN CONNECTICUT, DELAWARE, ILLINOIS, INDIANA, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, OHIO, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON D.C., WEST VIRGINIA AND WISCONSIN. SOME OF THESE VEHICLES HAVE A CONDITION IN WHICH THE FRONT BRAKE HOSE FITTING AT THE CALIPER MAY CORRODE DUE TO SNOW OR WATER, CONTAINING ROAD SALT OR OTHER CONTAMINANTS, ENTERING AND BEING RETAINED IN THE ROUTING SLEEVE. IF THE FITTING CORRODES SIGNIFICANTLY, THE BRAKE HOSE-TUBE INTERFACE MAY DEVELOP A LEAK.

**Consequence :** THE BRAKE HOSE-TUBE INTERFACE MAY RUPTURE SUDDENLY WITHOUT PRIOR WARNING AND INCREASE VEHICLE STOPPING DISTANCE MAY OCCUR INCREASING THE RISK OF A CRASH.

**Remedy :** DEALERS ARE TO REPLACE BOTH FRONT BRAKE HOSE ASSEMBLIES FREE OF CHARGE. THE SAFETY RECALL IS EXPECTED TO BEGIN DURING MAY 2010. OWNERS MAY CONTACT CADILLAC AT 1-866-982-2339 OR AT THE OWNER CENTER AT WWW.GMOWNERCENTER.COM.

**Notes :** GM RECALL NO. 09149. OWNERS MAY ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S VEHICLE SAFETY HOTLINE AT 1-888-327-4236 (TTY 1-800-424-9153), OR GO TO HTTP://WWW.SAFERCAR.GOV .

---

**NHTSA Campaign ID :** 14V394000

**Mfg's Report Date :** JUL 02, 2014

**Potential Number Of Units Affected :** 554,328

**Summary :** This defect can affect the safe operation of the airbag system. Until this recall is performed, customers should remove all items from their key rings, leaving only the ignition key. The key fob (if applicable), should also be removed from the key ring. General Motors LLC (GM) notified the agency on July 2, 2014 that they are recalling 554,328 model year 2003-2014 Cadillac CTS vehicles manufactured August 16, 2001, to April 28, 2014, and 2004-2006 Cadillac SRX vehicles manufactured March 20, 2003, to August 11, 2006. In these models, the weight on the key ring and/or road conditions or some other jarring event may cause the ignition switch to move out of the run position, turning off the engine.

**Consequence :** If the key is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury.

# CCC ONE. MARKET VALUATION REPORT

## SUPPLEMENTAL INFORMATION

**Remedy :** GM will notify owners, and dealers will provide two replacement key rings, and vehicles with slotted keys will receive key inserts, free of charge. The manufacturer has not yet provided a notification schedule. Owners may contact Cadillac customer service at 1-800-458-8006. GM's number for this recall is 14172.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.