UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND WILLIAMS, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br> v.<br><br>GEICO GENERAL INSURANCE COMPANY, and CCC INFORMATION SERVICES INCORPORATED,<br><br>      Defendants. | CASE NO. C19-5823 BHS<br><br>ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS |

This matter comes before the Court on Defendant Geico General Insurance Company's ("Geico") and Defendant CCC Information Services Incorporated's ("CCC") (collectively "Defendants") motions for judgment on the pleadings. Dkts. 52, 53. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motion for the reasons stated herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Raymond Williams ("Williams") brings suit against Geico and CCC for the alleged illegal practices for valuing his total loss claim. Dkt. 1. Williams's 2007

Cadillac CTS ("Cadillac") was insured by an insurance policy issued by Geico ("the Policy") when it was totaled in 2018. *Id.* ¶ 46. On March 6, 2018, Geico paid $6,364.96 for Williams's total loss claim for the Cadillac. *Id.* Williams alleges that the amount he was paid by Geico was based entirely on the contents of a CCC valuation report. *Id.*

Williams alleges that Geico and CCC conspired together to create a system in which CCC artificially deflates the estimated value of the total loss vehicle, which enables Geico to offer and pay less to claimants than the actual cash value. *Id.* ¶ 3. To value motor vehicle loss claims, Williams states that Geico obtains a valuation report from CCC, which presents a valuation of the loss based upon valuations of several comparable vehicles. *Id.* ¶ 21. Yet Williams further alleges that the CCC report improperly applies flat, un-itemized condition adjustments to each of the comparable vehicles. *Id.* ¶ 46. Here, the CCC report for Williams's Cadillac included an un-itemized adjustment for $596. Dkt. 36 at 68–69, 71, 73. Williams also contends that CCC and Geico use an algorithm that supplies salvage and gray market vehicles for comparable vehicles, even if the loss vehicle is not a gray market or salvage vehicle. Dkt. 1 ¶¶ 3, 6. Williams alleges that these practices by Geico and CCC violates Washington law, WAC 284-30-320, -391. *Id.* ¶¶ 38, 39.

On October 8, 2019—after Williams had filed suit—Geico demanded appraisal pursuant to the Policy. Dkt. 47-1, Ex. C, at 1–2. The Policy provides a process to determine the Cadillac's value if there is a disagreement as to the total loss claim:

> If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser.

ORDER - 2

> The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> Neither we nor the *insured* waive any of our rights under this policy by agreeing to an appraisal.

*Id.* Ex. B, at 11 (emphasis in original). On October 15, 2019, Williams agreed to proceed with appraisal. *Id.* Ex. D, at 3. The parties each selected an appraiser, *id.* Ex. D, at 1–2, and the appraisers agreed the Cadillac's value was $8,225.00, *id.* Ex. E, at 1. Geico then sent a check for $1,269.62, the total additional value of the Cadillac plus tax on the additional value. *Id.* Ex. F, Ex. G; *see also* Dkt. 52 at 3 (providing a calculation of Geico's payment following appraisal). Williams rejected the payment and returned the check to Geico, stating that he has not agreed to a settlement. Dkt. 49-1.

On September 3, 2019, Williams filed a class action complaint against Geico and CCC asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of Washington's Consumer Protection Act ("CPA"), and civil conspiracy, and requested declaratory and injunctive relief. Dkt. 1. In general, Williams alleges that Geico unfairly valued his allegedly totaled vehicle in violation of certain provisions of the Washington Administrative Code ("WAC"). *Id.*

On October 28, 2019, Geico moved to stay this case pending appraisal or, in the alternative, to dismiss the complaint for failure to state a claim and to strike all allegations in the complaint that refer to gray-market vehicles. Dkt. 36. On February 27, 2020, the Court denied Geico's motion. Dkt. 45.

1    On April 30, 2020, Geico moved to confirm the appraisal award. Dkt. 48. On
2 August 10, 2020, the Court granted the unopposed motion. Dkt. 54.

3    Geico and CCC moved for judgment on the pleadings on July 30, 2020. Dkts. 52,
4 53. On August 31, 2020, Williams responded to both motions. Dkt. 58. On September 11,
5 2020, Geico and CCC both replied. Dkts. 61, 62.

6    On October 13, 2020, Williams filed a notice of supplemental authority, Dkt. 65,
7 notifying the Court of a new order on motions for summary judgment in *Lundquist v. Fist*
8 *Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, Dkt. 257 (W.D. Wash. Oct. 1, 2020). On
9 October 22, 2020, CCC filed a notice of supplemental authority, Dkt. 68, notifying the
10 Court of the order on class certification in *Lundquist*, No. 18-5301 RJB, Dkt. 299 (W.D.
11 Wash. Oct. 21, 2020).

## II. DISCUSSION

13   Geico and CCC now move for judgment on the pleadings arguing that Williams's
14 claims fail because they are based on a theory unsupported by facts in the pleadings.
15 Dkts. 52, 53. Defendants argue that Williams was tendered the actual cash value of his
16 vehicle through the appraisal process and, because Williams's claims all rely on an
17 alleged underpayment of the Cadillac based on Geico's use of a CCC valuation report,
18 his claims must be dismissed.

**A.    Standard**

20   A motion for judgment on the pleadings is proper "when the moving party clearly
21 establishes on the face of the pleadings that no material issue of fact remains to be
22 resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v.*

*Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

**B.     Analysis**

      **1.     Breach of Contract against Geico**

Geico argues that it is entitled to judgment on the pleadings because Williams's breach allegations depend on Geico's payment of actual cash value for the Cadillac. Dkt. 52 at 4. Geico asserts that it acted upon the Policy's appraisal clause and tendered the actual cash value of the Cadillac. This action, Geico argues, is consistent with WAC 284-30-391 and dissolves Williams's breach of contract claim because Geico did not breach a duty imposed by the contract by invoking the Policy's appraisal clause and tendering the amount decided by appraisal.

However, Williams argues that Geico breached the contract through violating WAC 284-30-320, -330, and -391, which are incorporated into the Policy, through an allegedly unlawful valuation. Dkt. 1, ¶¶ 28–31, 38; Dkt. 58 at 8–9. The basis of Williams's action is the unlawful valuation: Williams does not allege that Geico breached the contract through the appraisal process, which was invoked after Williams filed suit, but rather argues that Geico breached the contract by failing to conduct a valuation that met the WAC's specific requirements. Dkt. 58 at 16. The Court agrees with Williams that his breach of contract claim depends on factual and legal issues that are beyond the scope of the appraisal process.

1   Geico also argues that Williams's breach of contract claim fails because he has no
2   injury because Geico paid him the actual cash value of the Cadillac as determined by the
3   appraisal process. Dkt. 52 at 7. Because Geico tendered payment, it argues that Williams
4   cannot have been injured by any alleged breach. However, Williams rejected the payment
5   and returned the check to Geico. Dkt. 49-1. "An unaccepted settlement offer—like any
6   unaccepted contract offer—is a legal nullity, with no operative effect. As every first-year
7   law student learns, the recipient's rejection of an offer leaves the matter as if no offer had
8   ever been made." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (internal
9   quotation marks and citation omitted). Moreover, the Ninth Circuit recognizes that a
10  named plaintiff in a putative class action may continue to represent the class and seek
11  timely class certification even when the named plaintiff has been made an offer for the
12  full amount of their individual claim. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–
13  92 (9th Cir. 2011); *accord Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 546–47 (7th
14  Cir. 2017); *Richard v. Bledsoe*, 829 F.3d 273, 282–84 (3rd Cir. 2016); *Lucero v. Bureau*
15  *of Collection Recovery, Inc.*, 639 F.3d 123, 1250 (10th Cir. 2011); *Sandoz v. Cingular*
16  *Wireless LLC*, 553 F.3d 913, 920–21 (5th Cir. 2008).

17  The Court finds that, because he rejected the tendered offer of payment, Williams
18  still has a cognizable injury from the breach of contract. But even if Williams did accept
19  the appraisal offer, his action against Geico seeks relief beyond the discrepancy between
20  the valuation and appraisal. Williams requests treble damages, attorney's fees, out-of-
21  pocket costs, and declaratory and injunctive relief. Dkt. 1, ¶¶ 20–21. Williams has a
22  continuing interest as the named plaintiff in the class action, and the unaccepted offer

does not cure the breach or injury. The Court thus denies Geico's motion as to the breach of contract claim.

### 2. Breach of the Covenant of Good Faith and Fair Dealing against Geico

In insurance cases, to establish bad faith, an insured is required to show that the insurer's actions were "unreasonable, frivolous, or unfounded." *Mutual of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 926 (2007). Geico argues, similar to its breach of contract argument, that Williams cannot prove that it acted in bad faith because Geico acted in accordance with the WAC and the Policy by invoking the appraisal clause. Dkt. 52 at 5–6. But again, Geico's argument fails for the same reason as its breach of contract argument: Williams is not alleging that Geico committed bad faith by failing to pay the actual cash value of the Cadillac but alleges that Geico engaged in an improper valuation process. Geico could and did invoke the appraisal clause, but that does not cure alleged breach of good faith and fair dealing or Williams's injury. The contractual right to appraisal may have resolved the dispute over the Cadillac's value, but initial valuation is what is at issue in this case. The Court therefore denies Geico's motion as to the breach of good faith and fair dealing claim.

### 3. CPA Claim against Defendants

To prevail in a private CPA claim, a plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Panag v. Farmers Inc. Co. of Wash.*, 166 Wn.2d 27, 37 (2009) (citing *Hangman Riding Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986)). A CPA violation may be predicated on either a per se

violation of a statute or on unfair or deceptive practices unregulated by statute but involving public interest. *Id.* at 37 n.3 (internal citations omitted). Violations of insurance regulations are subject to the CPA, and an insured may bring a CPA claim against their insurer for such violations. *See Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 921–22 (1990). "A single violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010. Under [the CPA], a violation of RCW 48.30.010 is a per se unfair trade practice and satisfies the first element of the 5–part test for bringing a CPA action[.]" *Id.* at 925.

      Here, Geico argues that Williams's CPA claim fails because the WAC permits appraisal to determine actual cash value and using the appraisal process cannot violate the CPA. Dkt. 52 at 6. Geico also argues that Williams cannot establish injury or causation. *Id.* at 8–9. CCC similarly argues that Williams has not been injured by CCC's valuation because Geico tendered payment following the appraisal process. Dkt. 53 at 11–15. CCC also asserts that Williams cannot show any harm caused by CCC because the chain of causation was broken by the superseding appraisal and Geico's tender of payment. *Id.* at 15–17.

      The Court agrees with Williams that the basis of his CPA claim is not the appraisal process but the valuation process. Williams alleges that Geico and CCC's use of CCC's allegedly unlawful valuation methodology breaches WAC 284-30-320 and -391, which is a per se violation of the CPA. Dkt. 1, ¶¶ 75–79. As to injury, Geico asserts the same argument that it did as to Williams's breach of contract claim: because Geico tendered payment as to the appraisal amount, Williams has no cognizable injury. Dkt. 52

at 8. The Court has rejected this argument because an unaccepted offer of payment has no operative effect, *see Campbell-Ewald Co.*, 577 U.S. at 162, and Geico's argument as to CPA injuries is therefore moot. CCC similarly argues that Williams has received all that he is entitled to receive and thus cannot prove that he has been injured to sustain a CPA claim. Dkt. 53 at 13. The Court again rejects this argument pursuant to the principles found in *Campbell-Ewald* and its progeny. Williams remains injured from the valuation process because he rejected the appraisal payment. Williams need not, as CCC argues, allege that the appraisal process was biased, prejudice, or otherwise procedurally improper in order to sustain his CPA claim. *Id.* at 14. His injuries, and the basis of his lawsuit, spring from Geico's use of the CCC report in the valuation process and cannot be cured now, after he has filed suit, through the appraisal process.

Defendants additionally argue that Williams cannot establish causation to support his CPA claim. Geico argues that Williams cannot establish that Geico's use of CCC's valuation report caused him harm because the Cadillac's value was determined by the appraisal, not CCC's valuation. Dkt. 52 at 8. CCC argues that Williams cannot show any harm caused by CCC because causation was broken by the superseding event of Geico's alleged reliance on the CCC valuation report. Dkt. 53 at 16. CCC also asserts that the appraisal was a superseding event that cut off any chain of causation. *Id.* at 17. Williams refutes these arguments by asserting that he brings a conspiracy case. Dkt. 58 at 19. Williams argues that it is inappropriate to decide causation on the pleadings because whether CCC's valuation proximately caused Williams's injuries is a question of fact. *Id.*

Because this case is about Geico's use of CCC's valuation report—not the appraisal process—and Williams alleges that the Defendants conspired together to cause Williams's injuries, the Court finds that Defendants have not carried their burden to warrant a judgment on the pleadings. The Court takes Williams's allegations as true, and Defendants must carry their burden to show that there are no issues of material fact to be resolved. *Hal Roach Studios*, 896 F.2d at 1550. Questions of fact remain as to whether Geico and CCC conspired together and whether CCC's valuation proximately caused Williams's injuries. In reviewing the pleadings, the Court finds that Williams has adequately pled a CPA claim. The Court therefore denies Defendant's motion as to Williams's CPA claim.

### 4. Civil Conspiracy Claim and Declaratory and Injunctive Relief against Defendants

Under Washington law, a plaintiff proves a civil conspiracy by showing "by clear, cogent and convincing evidence that (1) two or more people contributed to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State of Washington*, 84 Wn. App. 332, 350–51 (1996). Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently—its viability hinges on the existence of a cognizable and separate underlying claim. *N.W. Laborers–Employers Health & Sec. Trust Fund v. Philip Morris. Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999). Injunctive and declaratory relief are also derivative of underlying claims because they are forms of relief, not a standalone

claim. *See Bisson v. Bank of Am.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013) ("The Declaratory Judgment Act creates only a remedy, not a cause of action."); *Veridian Credit Union v. Edie Bauer, LLC*, 295 F. Supp. 3d 1140, 1151 (W.D. Wash. 2017) ("Washington does not recognize a standalone claim for injunctive relief, but rather views an injunction as a form of relief available for some causes of action.").

Defendants argue that because they are entitled to judgment on the pleadings, the Court should dismiss these derivative claims. Dkt. 52 at 10; Dkt. 53 at 18. But for the reasons set forth above, the Court finds that Defendants have not established that they are entitled to such a judgment on Williams's underlying claims. The Court thus denies Defendants' motions as to the conspiracy claim and as to Williams's request for declaratory and injunctive relief.

### III. ORDER

Therefore, it is hereby **ORDERED** that Geico's motion for judgment on the pleadings, Dkt. 52, and CCC's motion for judgment on the pleadings, Dkt. 53, are **DENIED**.

Dated this 27th day of October, 2020.

BENJAMIN H. SETTLE
United States District Judge